JUAN PIZÁ BLONDET y WILSON BUILDING CORPORATION, peticionarios, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. MIGUEL GIMÉNEZ MUÑOZ, JUEZ, demandado; SALVADOR JIMÉNEZ GUEVARA, interventor.

*Número:* O-74-480        *Resuelto:* 25 de febrero de 1975

*Francis, Doval, Colorado & Carlo* y *Leonardo Andrades Lugo,*
abogados de los peticionarios; *Luis Fernándo Ramírez* y
*Armando Rivera Carretera,* abogados del interventor.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

En la demanda incoada por Jiménez Guevara contra Pizá
Blondet, titulada sobre incumplimiento de contrato, se piden
dos remedios alternativos: cumplimiento específico, o la condena al pago de una obligación por $270,000 más $200,000 de
indemnización por daños y perjuicios derivados del incumplimiento de contrato, y $25,000 para honorarios de abogado y
costas. Funda Jiménez su razón de pedir en un contrato cuya
cláusula séptima dispone:

"SIETE: Pizá y/o Wilson se comprometen y obligan a satisfacer a Jiménez y/o Professional, o a la corporación que Jiménez
designe, el crédito por la suma de DOSCIENTOS SETENTA
MIL DOLARES ($270,000.00) a que se refiere la cláusula
CINCO de este contrato, en la siguiente forma:

1—Pizá y/o Wilson transferirán a una corporación, a ser
incorporada, un solar de 22,000 ó 22,500 metros cuadrados
sito en Isla Verde, Puerto Rico.

2—El cincuenta porciento (50%) de las acciones de la corpoción a que se refiere el inciso anterior se le venderá a Jiménez

por un precio equivalente al 50% del valor en el mercado del solar a que se refiere el inciso anterior. El valor en el mercado del mencionado solar lo determinará mediante tasación el Sr. Ferdinand Acevedo, la cual tasación se le someterá al Sr. Pizá dentro de treinta (30) días a partir de la fecha de este contrato.

3—El precio de las acciones, según se determine de acuerdo a lo establecido en el inciso anterior será pagado por Jiménez en la siguiente forma:

a) $270,000.00 mediante la cancelación y liberación total y definitiva del crédito a su favor que se menciona en la cláusula CINCO de este contrato. En otras palabras, la suma de $270,000.00 le será acreditada a Jiménez al precio total de compra de las acciones; y

b) el remanente del precio de compra de las acciones será satisfecho por Jiménez en dos (2) pagos anuales, a partir de la fecha en que se consuma dicha transacción o se expidan las acciones a favor de Jiménez, cualquiera de dichos eventos que ocurra primero. El balance aplazado devengará intereses al siete por ciento (7%) anual, pagaderos trimestralmente.

c) la suma de $270,000.00 que al presente se le adeudan a Jiménez y cualquier aumento que tenga dicha cantidad como consecuencia de reajustes pendientes, devengarán intereses al 7% pagaderos trimestralmente hasta tanto se le acredite el precio de compraventa de la propiedad mencionada en la cláusula SIETE, Sub-párrafo 1.

4—Jiménez asumirá el pago del 50% del total de los intereses que devengue la hipoteca por la suma principal de $930,000.00 que actualmente grava el solar a que se refiere el inciso 1 de esta cláusula. Disponiéndose, que dicha obligación se extenderá a los intereses devengados a partir del día primero de enero de 1971, siempre y cuando que la entrega de las acciones, según es estipulado en el inciso 2 de esta cláusula, sean emitidas a favor de Jiménez dentro de los próximos noventa (90) días a partir de la fecha de este contrato. Disponiéndose, además, que dicha obligación también estará sujeta a que dentro del mencionado término de noventa (90) días Pizá y/o Wilson transfieran a la corporación que se creará según lo convenido en el inciso 1 de esta cláusula el solar de 22,000 ó 22,500 metros cuadrados que es mencionado en dicho inciso 1.

La venta de acciones se efectuará dentro del término de sesenta (60) días a partir de la fecha de este contrato."

El demandante Jiménez aquí interventor, en aseguramiento de efectividad de sentencia obtuvo una orden instruyendo al Registrador de la Propiedad que anotara aviso de demanda (*lis pendens*) en cuanto al inmueble concernido que finalmente se identificó como parcela de 22,548.125 metros cuadrados en Cangrejos Arriba, Carolina; y además prohibiendo al demandado Pizá la enajenación o gravamen de dicha propiedad. El tribunal de instancia rehusó admitir fianza al demandado para liberarse de la grave restricción a su derecho de dominio y ante nos recurre con la urgencia de quien tiene una propiedad gravada por casi un millón de dólares y paralizada toda contratación hace año y medio. Expedimos orden para mostrar causa por la que no deba anularse la resolución recurrida y admitir fianza al demandado, y los alegatos de las partes han reafirmado nuestro criterio original.

La Regla 56 de Procedimiento Civil es fecunda en su provisión de remedios para asegurar la efectividad de la sentencia que no restringe a los convencionales y por el contrario extiende sin enumeración a "cualquier otra medida que [el tribunal] estime apropiada, según las circunstancias del caso." *Suárez Martínez* v. *Tribunal Superior*, 85 D.P.R. 544, 549 (1962). Responde en su latitud a un diseño procesal en cuya ejecución deberá el tribunal considerar los intereses de todas las partes, declaración ésta que anticipó el severo escrutinio revelador de invalidez constitucional en estatutos análogos en otras jurisdicciones. *Sniadach* v. *Family Finance Corporation of Bay View*, 395 U.S. 337 (1969); *Fuentes* v. *Shevin*, 407 U.S. 67 (1972); *Domínguez Talavera* v. *Tribunal Superior*, 102 D.P.R. 423 (1974); *North Georgia Finishing Inc.* v. *Di-Chem Inc.*, 95 S.Ct. 719 (1975), 43 U.S.L.W. 4192); *Mitchel* v. *Grant*, 40 L. Ed.2d 406 (1974).

El remedio para el aseguramiento de la sentencia concedido en este caso fue dual y frente a las circunstancias del

mismo, oneroso y confiscatorio. Se le prohibió al demandado aquí peticionario enajenar una propiedad valiosa y simultáneamente se ordenó al Registrador de la Propiedad la anotación de un aviso de demanda (*lis pendens*), sacándose del comercio un inmueble de gran valor y anulando el derecho de dominio y la facultad de contratar libremente de su dueño quien maniatado por interdicto judicial corre el riesgo de perder su propiedad afecta como se halla a un cuantioso crédito hipotecario.

■ Considerando las graves consecuencias que desata en el libre comercio y especialmente el efecto destructor en la economía del demandado, el remedio de prohibición de enajenar, como la sindicatura, deben justificarse con indeclinable rigor y necesidad estricta. No podrá expedirse orden sobre prohibición de enajenar en aseguramiento de efectividad de sentencia si las propias alegaciones de la demanda fallan en acusar la existencia de la causa de acción sobre la cual se pide el aseguramiento y demuestran de modo patente que el actor no podrá obtener sentencia contra el demandado. *Armstrong y Co.* v. *Irizarry*, 29 D.P.R. 606 (1921); *Mercedes Bus Line* v. *Rojas*, 70 D.P.R. 540, 545 (1949); *Gastón* v. *Herederos de Franceschi*, 43 D.P.R. 308, 309 (1932). Las sentencias judiciales se dictan sobre controversias reales en las que la decisión del tribunal llegado el momento de ejecución, no ha de tropezar con la perplejidad de intangibles y proyectos sin concretarse.

Aquí se solicitó y obtuvo la prohibición de enajenar bajo la premisa de que el demandante-interventor tiene razón de pedir cumplimiento específico del contrato consistente en la entrega de cosa determinada que regula el Art. 1049 del Código Civil (31 L.P.R.A. sec. 3013).(¹) Incidió el tribunal

---

(¹) Art. 1049 del Código Civil

"Cuando lo que deba entregarse sea una cosa determinada, el acreedor, independientemente del derecho que le otorga la sec. [3018 de este título], puede compeler al deudor a que realice la entrega.

a quo.. La transcrita cláusula siete del contrato dispuso que el solar en Isla Verde, el inmueble cuya entrega reclama el demandante, no se transferirá a éste, sino a una corporación *a ser organizada* en la cual el demandante Jiménez sólo tendría la mitad de las acciones para pagar las cuales y considerando el valor de la finca, no bastan los $270,000 del crédito contra Pizá que abonaría al precio, sino que tendría que pagar un balance hasta completar el 50% del valor en el mercado del solar en término de dos años y devengando intereses al 7% anual. Resulta claro que la cosa cuya entrega reclama el demandante no es ahora, ni sería suya en circunstancia alguna, pues el contrato limitó su interés en la misma a un 50%. Aun bajo las condiciones ideales de un cumplimiento específico viable, es cuestionable su derecho a una orden prohibiendo al demandado la enajenación y gravamen de la otra mitad del inmueble representada por el 50% de las acciones corporativas que éste siempre retendría.

Pero el pacto de transferir la propiedad a una corporación inexistente al momento en que se convino no es susceptible de cumplimiento impuesto u ordenado por el tribunal. La entidad corporativa es persona jurídica sujeta a precisa regulación por la Ley de Corporaciones (14 L.P.R.A. sec. 1101 y ss.) que la configura como integrada por no menos de tres personas (Art. 101) que deberán suscribir un certificado de incorporación que contendrá nombre y domicilio de cada incorporador, objetivos, clase, y valoración de acciones, y término de vida si no ha de tener existencia perpetua; reglas de administración del negocio y derecho preferente de los accionistas para adquirir las distintas clases de acciones; determinación del voto en proporción a las acciones para cualquier acto corporativo y número de accionistas según lo decidan los incorpora-

---

"Si la cosa fuere indeterminada o genérica, podrá pedir que se cumpla la obligación a expensas del deudor.

"Si el obligado se constituye en mora, o se halla comprometido a entregar una misma cosa a dos o más personas diversas, serán de su cuenta los casos fortuitos hasta que se realice la entrega."

dores (Art. 102); estatutos para régimen interno (Art. 109) y juramento por todos los incorporadores y radicación en Secretaría de Estado del certificado de incorporación (Art. 103). Sólo después de otorgado y radicado el certificado de incorporación y registrado según lo dispuesto en el Art. 103, y pagados los derechos requeridos por ley quedará constituida la entidad corporativa por las personas que de tal modo se asocien y comenzará entonces su personalidad jurídica (Art. 106). ¿Qué nombres de incorporadores, condiciones y términos de incorporación exigidos por los precedentes artículos de la Ley de Corporaciones contiene el contrato que nos ocupa de modo que pueda el tribunal por lo menos inquirir de persona alguna su disposición a organizar la corporación a la que deberá transferirse título sobre el inmueble? (²) ¿A quién puede obligarse a integrar la corporación, elemento esencial del convenio formalizado en la cláusula séptima? Ya anteriormente este Tribunal contempló la posibilidad de que un convenio para formar una corporación no se hará cumplir específicamente por los siguientes motivos: ". . . que los términos del contrato no eran lo suficientemente precisos y definidos . . .; que una corte de equidad no dictará un decreto que requiera supervisión extensa . . .; que una corte de equidad no tiene facultad para controlar por medio de su decreto de cumplimiento específico la discreción de funcionarios administrativos de los cuales, bajo ley del estado, tenga que solicitarse un permiso para la expedición de acciones . . .; que la demanda solicita el cumplimiento de actos que requieren la participa-

---

(²) La improcedencia e imposibilidad práctica de un cumplimiento de contrato impuesto por sentencia se plasma en alto relieve en la misma súplica de la demanda cuando dice: "y de los demandados negarse, se solicita que el Tribunal ordene al Alguacil que embargue [sic] en aquellos documentos que sea necesario para llevar a efecto el contrato." Sería una pesadilla más que aberración jurídica para cualquier Alguacil ejecutar la sentencia dándose a la faena de reclutar incorporadores, organizar la junta de directores, emitir acciones y obligarlos a aceptar el reglamento interno, todo ello bajo coacción.

ción de otras personas que no son partes ni en el contrato ni en el pleito . . .; que el tribunal no tiene poder para obligar a una corporación inexistente que expida y distribuya acciones de manera específica . . .; que el tribunal no tiene poder para obligar a una corporación a elegir personas específicas como oficiales de la misma . . .; que pudiera ser imposible para el demandado encontrar el número necesario de incorporadores . . .; que la fecha del pleito, las partes estaban disgustadas . . .; que tres de los cuatro propuestos incorporadores eran insolventes . . .; que la promesa del demandante de rendir servicios a la proyectada corporación no era susceptible de cumplimiento específico." *Vázquez* v. *Tribunal Superior*, 78 D.P.R. 744, 752 (1955).

■ Que la acción civil "afecte el título o el derecho de posesión" del solar en Isla Verde en grado que le permita ganar acceso al Registro de la Propiedad como aviso de demanda (*lis pendens*) bajo el Art. 91 del Código de Enjuiciamiento Civil, depende enteramente de que el contrato de referencia sea susceptible de cumplimiento específico. Demostrado que no lo es, únicamente subsiste en la demanda del interventor una reclamación en cobro de dinero y daños y perjuicios que por su naturaleza personal no está comprendida en el ámbito del citado Art. 91 de Enjuiciamiento Civil. *Martínez* v. *Registrador*, 101 D.P.R. 544 (1973). Resta al demandante el clásico remedio de embargo de bienes al que limitó su solicitud original de aseguramiento de efectividad de sentencia de fecha 14 de agosto 1973 y que abandonó cuando el tribunal por orden de 28 del mismo agosto le exigió fianza de $400,000. Bajo éste su único remedio provisional tendrá el demandado y aquí peticionario derecho a afianzar el embargo. Regla 56.3 de Procedimiento Civil.

*Se expedirá el auto y se dictará sentencia dejando sin efecto todas las actuaciones y resoluciones del tribunal de instancia prohibiendo al demandado recurrente enajenar o gravar la propiedad concernida y ordenando un aviso de*

474

*demanda (lis pendens); se continuarán en el Tribunal Superior los procedimientos consistentes con esta opinión y la resolución recurrida de 30 de octubre de 1974 ha de ser anulada.*

El Juez Presidente Señor Trías Monge no intervino.