JULIÁN VÁZQUEZ OLMEDO, peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. J. M. CALDERÓN, JR., JUEZ, demandado, y SAN MIGUEL Y CÍA., interventora.

Número 2076.

*Sometido:* 2 de mayo de 1955. *Resuelto:* 11 de octubre de 1955.

Héctor Ramos Mimoso, abogado del peticionario; Francisco Ponsa Feliú, abogado de la interventora, demandante en el pleito principal.

EL JUEZ PRESIDENTE SEÑOR SNYDER emitió la opinión del Tribunal.

San Miguel & Cía., Inc., y Julián Vázquez Olmedo otorgaron un contrato mediante el cual convinieron en organizar una corporación en la que cada uno de ellos sería dueño de $100,000 en acciones y de la que Vázquez sería Gerente General. San Miguel & Cía., Inc., demandó a Vázquez en cumplimiento de contrato y daños y perjuicios. Expedimos un auto de *certiorari* para revisar la resolución del Tribunal Superior declarando sin lugar la moción del demandado para que

se eliminara el párrafo de la súplica que solicitaba el cumplimiento del contrato.

■■ La demanda es tan concisa que la copiamos íntegramente:

"1. La demandante y el demandado formalizaron un contrato que se une a esta demanda y se hace formar parte de la misma marcado 'Exhibit A'.

"2. El demandado se ha negado y se niega intencionalmente a cumplir sus prestaciones y obligaciones según el contrato a pesar de los requerimientos hechos al efecto por la demandante, la cual está en aptitud y disposición de cumplir todas las suyas de acuerdo con dicho contrato.

"3. El incumplimiento del contrato por el demandado está causando y ha causado a la demandante hasta esta fecha daños y perjuicios que ascienden a la cantidad de $20,000.00.

"4. La demandante SOLICITA sentencia:

"(a) condenando al demandado a cumplir con todas y cada una de sus obligaciones de acuerdo con el contrato;

"(b) condenando al demandado a pagar a la demandante daños y perjuicios por la cantidad de $20,000.00;

"(c) condenando al demandado al pago de costas, gastos, intereses y honorarios del abogado de la demandante; y

"(d) dictando cualquier otro pronunciamiento procedente en derecho."

El contrato, que se hace formar parte de la demanda, provee que las partes han concertado un acuerdo para constituir una corporación doméstica para dedicarse al comercio en la rama de productos eléctricos, de gas flúido, de refrigeración y de pesar y medir, con sede principal en San Juan. El contrato contiene las siguientes cláusulas y condiciones:

"*Primera:* El nombre de la corporación será North Electric And Refrigeration Corporation.

"*Segunda:* El capital autorizado de la corporación será de Un Millón de Dólares ($1,000,000.00), dividido en Diez Mil (10,000) acciones comunes de un valor a la par de Cien Dólares ($100.00) cada una.

"*Tercera:* El capital pagado será de Doscientos Mil Dólares ($200,000.00), de los cuales el compareciente Sr. Vázquez Olmedo aportará Cien Mil Dólares ($100,000.00), y la compa-

reciente San Miguel & Compañía, Inc., los restantes Cien Mil Dólares ($100,000.00).

"*Cuarta*: El compareciente Sr. Vázquez Olmedo pagará sus acciones en obligaciones suscritas por él y por su esposa, Sra. María Plard de Vázquez Olmedo. Dichas obligaciones estarán garantizadas colateralmente con todo título, derecho, interés y participación que corresponden a los esposos Vázquez Olmedo en el contrato suscrito en 10 de abril de 1953 por don Julián Vázquez Olmedo y don Luis R. González, cubriendo la compra de los derechos y las acciones del Sr. Vázquez Olmedo en la North Electric Company, Inc. Las obligaciones que el Sr. Vázquez Olmedo y su esposa hayan de suscribir en pago de las acciones de la corporación devengarán intereses simples al seis por ciento (6%) anual que se les cargarán en cuenta para ser abonados con los beneficios de la corporación.

"*Quinta:* Los incorporadores de la nueva entidad serán
   José A. Martínez Román
   Julián Vázquez Olmedo
   María Plard de Vázquez Olmedo, y
   Jorge Ruiz Rivera,
con un capital suscrito de Trescientos Dólares ($300.00) cada uno.

"*Sexta:* La Junta de Directores de North Electric and Refrigeration Corporation quedará constituída por las siguientes personas:
  Presidente: Marcelino San Miguel
Vice-Presidente: Julián Vázquez Olmedo
  Secretaria: María Plard de Vázquez Olmedo
  Tesorero : José M. Martínez Román
  Suplentes : Ana María Pérez
     Guillermo Machargo del Río
     Arturo A. Plard
     Augusto J. Plard

"*Séptima:* El compareciente, Sr. Julián Vázquez Olmedo, será Vice-Presidente y Gerente General de la corporación con un sueldo anual de Nueve Mil Dólares ($9,000.00), pagadero por mensualidades vencidas."

La cláusula octava provee que la corporación se dedicará al negocio arriba descrito así como a cualesquiera otras actividades de lícito comercio. La novena señala un lugar espe-

cífico para su sitio de negocio, y la décima prescribe que el canon de arrendamiento por el mismo será de $550 mensuales. Las cláusulas restantes del contrato prescriben en detalle en cuanto a la valoración y forma de traspaso a la proyectada corporación (1) del inventario de existencias y equipo que al presente pertenecen al Departamento de Refrigeración de la demandante y (2) de las obligaciones de la nueva corporación de prestar servicio a los anteriores compradores de equipo de dicho Departamento de Refrigeración.

Mediante su moción para que se eliminara una parte de la súplica—el párrafo 4 (a)—el demandado solicitó se resolviera que la demandante no tiene derecho al remedio de cumplimiento de contrato, según éste se distingue del de daños y perjuicios.[1] La Regla 12 (f) de las Reglas de Enjuiciamiento Civil dispone que sólo ". . . materia redundante, inmaterial, impertinente o escandalosa . . ." puede ser eliminada de una alegación. Las mociones eliminatorias no son favorecidas. No se eliminará materia alguna ". . . a no ser que surja claramente que no puede tener ninguna conexión posible con la cuestión en controversia. Si existe alguna duda en cuanto a si bajo alguna contingencia dicha materia puede suscitar una cuestión, la moción debe declararse sin lugar." 2 Moore's *Federal Practice*, segunda ed., párrafo 12.21, págs. 2317-8, citando casos; id., *1955 Cum. Supp.*, págs. 175 et seq.; *Tartak* v. *Tribunal de Distrito*, 74 D.P.R. 862, 868; *Alicea* v. *Sucn. J. Serrallés*, 71 D.P.R. 483, 485.

Por consiguiente pasemos a la cuestión de si las alegaciones de la demanda, incluyendo la súplica, podrían por cualquier posible contingencia, darle derecho a la demandante al cumplimiento del contrato. De conformidad con el derecho civil—contrario al derecho común—el hecho de que un de-

---

[1] Dejamos a un lado la contención de la demandante al efecto de que la moción para eliminar cierta parte de la súplica debió haberse denegado sin más discusión, en vista del hecho de que la súplica no es generalmente considerada como parte de la demanda. Suponemos que haríamos una excepción en este caso en vista de las concisas y generales alegaciones del cuerpo de la demanda. *Cf. Pueblo* v. *Henneman*, 60 D.P.R. 59, 67.

mandante que alegue incumplimiento de contrato tenga un remedio adecuado por vía de daños y perjuicios no le impide tratar de obtener el cumplimiento del contrato. El demandante ". . . podrá escoger entre exigir el cumplimiento o la resolución de la obligación con el resarcimiento de daños . . .". Art. 1077, Código Civil, ed. de 1930, 31 L.P.R.A. sec. 3052; art. 1340 del Código Civil, 31 L.P.R.A. sec. 3747; Szladits, *The Concept of Specific Performance in Civil Law*, IV Am. J. Comp. L. 208; Jackson, *Specific Performance of Contracts in Louisiana*, 24 Tulane L. Rev. 400.[2]   Pero aun cuando lo adecuado del remedio de daños y perjuicios no juega papel alguno bajo nuestro derecho, los arts. 1077 y 1340 del Código Civil no crean un derecho automático y absoluto al cumplimiento de un contrato en todos los casos. Por ejemplo, no procede este remedio cuando el contrato es imposible de cumplir o con raras excepciones cuando se exige la prestación de servicios personales. Véanse Szladits, supra; *Nuñez* v. *Soto Nussa, Juez de Distrito*, 14 D.P.R. 199; Anotación 135 A.L.R. 279; 5 Williston, *Contracts*, ed. revisada, sec. 1422, pág. 3973; *id.*, sec. 1423A, pág. 3983. En igual forma, en vista de la naturaleza especial de una corporación y de algunas de las disposiciones de nuestra Ley de Corporaciones—Ley núm. 30, Leyes de Puerto Rico, 1911, según ha sido enmendada, 14 L.P.R.A. secs. 52 et seq.—pueden existir factores y circunstancias en un contrato específico para organizar una corporación que impedirían a nuestros tribunales ordenar el cumplimiento del contrato.

El art. 6 de nuestra Ley de Corporaciones—14 L.P.R.A. sec. 81—prescribe tres o más incorporadores. En el contrato aquí envuelto se nombra al demandado y a otras tres personas como incorporadores. Toda vez que los otros tres

---

[2] Para los casos resueltos bajo los arts. 1077 y 1340, véanse *Caballero* v. *Kogan*, 73 D.P.R. 666; *Collazo* v. *Conesa*, 70 D.P.R. 155; *De la Haba* v. *Gay & Co., S. en C.*, 52 D.P.R. 585; *Ayende et al* v. *Crespo*, 38 D.P.R. 141; *Cruz* v. *Martínez*, 29 D.P.R. 66. *Cf. Javierre* v. *Central Altagracia*, 217 U. S. 502, que revocó a *Central Altagracia* v. *Javierre & Gil*, III P. R. Fed. Reports 256, que aparentemente fué resuelto sin tomar en consideración las disposiciones de nuestro Código Civil.

no firmaron el contrato, no están obligados a actuar como incorporadores. Por tanto el demandado arguye que es imposible para el tribunal sentenciador obligarlo a cumplir el contrato en vista de la posibilidad de que dos de las otras tres personas pueden negarse a servir como incorporadores.

La demandante quizás podría alegar que la identidad de los incorporadores es un asunto un tanto formal y que se pueden conseguir con facilidad nuevos incorporadores para sustituir aquellos que rehusen cooperar. Pero los incorporadores—en adición a suscribir acciones de la proyectada corporación—desempeñan funciones importantes en relación con la organización de una corporación. Véase el párrafo 7 del art. 7 de la Ley de Corporaciones, 14 L.P.R.A. sec. 82, párrafo 7. En consecuencia hay algún mérito en la contención del demandado al efecto de que el no conseguir tres incorporadores de la lista de cuatro contenida en el contrato echaría por tierra el derecho de la demandante al cumplimiento del contrato. Sin embargo, el caso no está maduro para la determinación de esta cuestión. La disposición de tres incorporadores a servir es una cuestión de prueba por medio de declaraciones juradas en apoyo de una moción de sentencia sumaria o de testimonio en el juicio, y no una de especulación al considerar una moción eliminatoria. Por igual motivo no podemos especular, como nos pide el demandado, que podría no ser posible obtener la aceptación de tres de las personas nombradas en la cláusula sexta del contrato para servir como directores según lo exige el art. 9 de la Ley de Corporaciones, 14 L.P.R.A. sec. 85. El demandado podrá suscitar todas estas cuestiones en una etapa posterior del caso. No podemos pasar sobre ellas mediante una moción eliminatoria.([3])

(3) El demandado no puede ser obligado a servir como director o como vicepresidente y gerente general. *Nuñez* v. *Soto Nussa, Juez de Distrito,* supra. *Quaere,* si este factor y algunos más impedirían una sentencia en cumplimiento del contrato, toda vez que es imposible ordenar el cumplimiento de todos los términos del contrato. *Cf. Roller* v. *Weigle,* 261 Fed. 250 (C.A. D.C., 1919); *Deitz* v. *Stephenson,* 95 Pac. 803 (Ore., 1908); Anotación, 22 A.L.R.2d 508, 540–1; 5 Williston, supra, sec. 1430, pág. 4002, et seq. Véase también *Municipio* v. *Vidal,* 65 D.P.R. 370.

El presidente de una corporación debe seleccionarse de entre los directores, quienes deberán ser accionistas de buena fe. Art. 11 de la Ley de Corporaciones, 14 L.P.R.A. sec. 87. El contrato dice que Marcelino San Miguel será director y presidente, pero nada dice en cuanto a que él sea accionista. El demandado por consiguiente sostiene que esto impide el cumplimiento del contrato. Tampoco podemos suponer al considerar una moción eliminatoria que a la demandante no le será posible demostrar que San Miguel está en posición de obtener de la corporación demandante una acción que le dé derecho a ser director. Una vez más debe posponerse la consideración de esta cuestión hasta que el tribunal tenga ante sí información definitiva sobre la misma.

Citando el caso de *Encarnación* v. *Salim*, 69 D.P.R. 766, el demandado levanta la cuestión de si el contrato puede hacerse cumplir en vista del hecho de que el mismo tiene por miras obligar a la esposa del demandado, que no firmó el contrato, (1) a otorgar junto con el demandado las "obligaciones" que constituyen el pago por las acciones del demandado, y (2) a servir como incorporadora y directora. El demandado radicó una declaración jurada de su esposa al efecto de que ella no suscribiría las "obligaciones" y no sería incorporadora o directora. No podemos tomar esta declaración jurada en consideración. Aun cuando Moore llama esto una ". . . lamentable posición técnica . . .", convenimos con los casos al efecto de que de ordinario materia ajena a las alegaciones no será considerada en apoyo de *una moción eliminatoria*. 2 Moore, supra, pág. 2320; *id.*, Sup. 1955, pág. 178; *In the Matter of Miller*, 6 Fed. Rules Serv. 12f. 26, Case 1 (N.D., Ohio, 1942); *Thrailkill* v. *Calloway*, 9 Fed. Rules Serv. 12f. 26, Case 2 (E.D., Tenn., 1946). La contención sobre este punto es cuestión seria y sustancial que el tribunal sentenciador vendrá llamado a considerar a su debido tiempo.(4)

---

(4) Sobre todas estas cuestiones de obligar a personas que no son partes en el contrato a servir como incorporadores y directores—y en el caso de la

El demandado pone gran énfasis en una Anotación en 158 A.L.R. 997. Esta Anotación cita a la pág. 999 de Ehrich, *Promoters*, pág. 57, sec. 38 al efecto de que "quizás podría decirse categóricamente que un convenio para formar una corporación no se hará cumplir específicamente."

Esta Anotación dice entonces a las págs. 999 a 1000: "Como proposición general, esta manifestación ha sido sustentada por la jurisprudencia. En casi todos los casos dentro del alcance de la presente anotación se ha negado el cumplimiento específico por uno o más de los siguientes motivos: que los términos del contrato no eran lo suficientemente precisos y definidos . . . ; que una corte de equidad no dictará un decreto que requiera supervisión extensa . . . ; que una corte de equidad no tiene facultad para controlar por medio de su decreto de cumplimiento específico la discreción de funcionarios administrativos de los cuales, bajo ley del estado, tenga que solicitarse un permiso para la expedición de acciones . . . ; que la demanda solicita el cumplimiento de actos que requieren la participación de otras personas que no son partes ni en el contrato ni en el pleito . . . ; que el tribunal no tiene poder para obligar a una corporación inexistente que expida y distribuya acciones de manera específica . . . ; que el tribunal no tiene poder para obligar a una corporación a elegir personas específicas como oficiales de la misma . . . ; que pudiera ser imposible para el demandado encontrar el número necesario de incorporadores . . . ; que a la fecha del pleito, las partes estaban disgustadas . . . ; que tres de los cuatro propuestos incorporadores eran insolventes . . . ; que la promesa del demandante de rendir servicios a la proyectada corporación no era susceptible de cumplimiento específico." La Anotación cita y discute los casos que sostienen estas proposiciones. El tribunal sentenciador vendrá obligado a determinar cuál de las anteriores proposiciones, de haber al-

esposa, para suscribir "obligaciones"—*cf.* 5 Williston, supra, sec. 1422, págs. 3973–4.

guna, es de aplicación al presente caso luego de desarrollarse los hechos. ([5])

Sería fútil, según se indica en dicha Anotación, ordenar la organización de una corporación que tendría que ser disuelta casi inmediatamente porque hay una controversia y división irreconciliable entre los accionistas. *Cf.* Anotación, 13 A.L.R.2d 1260; O'Neal, *Resolving Disputes in Closely Held Corporations: Intra-Institutional Arbitration*, 67 Harv. L. Rev. 786, 787, escolio 3; 29 N.Y.U. L. Rev. 1485, y 68 Harv. L. Rev. 714, comentando el caso de *In re Radom & Neidorff, Inc.*, 119 N.E.2d 563 (N.Y., 1954); 29 Tulane L. Rev. 147, comentando el caso de *Kay* v. *Key West Development Co.*, 72 S.2d 786 (Fla., 1954); *Comment*, 43 Calif.L.Rev. 514 (julio de 1955). Pero a base de una moción eliminatoria que pende ante nos no es posible determinar si aquí existe tal controversia y división irreconciliables.

Hay otras disposiciones en el contrato que ninguna de las partes discute en su alegato sobre las que el tribunal sentenciador tendrá que pasar. Por ejemplo, el art. 18 de la Ley núm. 30, 14 L.P.R.A. sec. 121, prescribe en parte: "Salvo en la forma prescrita por este Artículo, no se considerará como pago de parte alguna del capital social de una corporación organizada bajo esta ley sino el que se efectúe en dinero." ¿Viola este art. 18 la disposición contenida en la cuarta cláusula del contrato al efecto de que el demandado pagará por sus acciones con "obligaciones" suscritas por él y su esposa? *Cf.* Anotaciones, 58 A.L.R. 708; 37 A.L.R.2d 913; 11 Fletcher, *Cyclopedia Corporations*, ed. permanente, sec. 5194, págs. 444 et seq. Véase *Julio Godreau Co.* v. *El Registrador*, 23 D.P.R. 65. De ser así, ¿puede el demandado levantar tal

---

([5]) Algunas de las dificultades envueltas en un pleito por cumplimiento de un contrato para organizar una corporación aparecen descritas en Dodd y Baker, *Cases on Business Associations, Corporations*, Vol. I, pág. 808, y *Hyer* v. *Richmond Traction Company*, 168 U. S. 471, 483. Para la discusión de la cuestión de cumplimiento específico de contratos para vender o comprar acciones, véanse 51 Mich.L.Rev. 408; 81 C.J.S. págs. 577 a 579; Anotación, 130 A.L.R. 920; 5 Williston, supra, 3957.

contención, o sólo puede hacerlo la demandante o la futura corporación? *Cf.* 11 Fletcher, supra, sec. 5196 et seq. ¿Afecta el hecho de que cuando se radicó la demanda todavía no se había constituído la corporación, la cuestión de quién puede levantar dicho punto?

Como hemos visto el contrato dispone que los accionistas elegirán ciertas personas como directores; que el demandado será vicepresidente y gerente general de la futura corporación con sueldo de $9,000 al año; y que la corporación tomará en arrendamiento cierto edificio a un canon estipulado. Con motivo de estas disposiciones del contrato surgen por lo menos dos cuestiones. La primera es si los accionistas en perspectiva de una corporación inexistente pueden válidamente obligarse a votar en esta forma en el futuro. La segunda es si tales disposiciones invaden ilegalmente las facultades estatutarias conferidas a los directores por el art. 11 de la Ley de Corporaciones, 14 L.P.R.A. sec. 87,[6] especialmente si los accionistas en perspectiva no están unánimemente en favor de dichas disposiciones y está envuelta una corporación que todavía no se ha organizado. *Cf.* Nota, *Shareholder Participation in Corporate Management*, 40 Va. L. Rev. 901; Hornstein, *Stockholders' Agreement in the Closely Held Corporation*, 59 Yale L. J. 1040, 1042 a 1044; [7]

---

[6] El art. 11 de la Ley núm. 30, según fué enmendado por la Ley núm. 24, Leyes de Puerto Rico, 1916, dice en parte lo siguiente: "Los negocios de toda corporación estarán manejados por sus directores, cada uno de los cuales deberá ser, en el momento de su elección, accionista de buena fe de dicha corporación . . .".

[7] Hornstein, una conocida autoridad en derecho corporativo, dice a las págs. 1042 a 1043 de 59 Yale L. J. que un convenio entre *todos* los accionistas para votar por algunos de ellos mismos como directores quienes luego nombrarán personas especificadas para cargos ciertos con sueldos fijos, probablemente es válido. Pero aquí algunos de los accionistas no son partes en el contrato, *cf.* escolios 3 y 4. Además, Hornstein dice a la pág. 1044: "Aun cuando los accionistas puedan válidamente convenir en elegirse a sí mismos directores y nombrar personas específicas como oficiales, no podrían hacer caso omiso totalmente de la junta de directores mediante un convenio escrito por el cual se apropien virtualmente de todos los poderes de los directores." Dejamos estas sustanciales cuestiones, que el demandado no ha levantado aún, para que el tribunal sentenciador las determine en primera instancia.

Delaney, *The Corporate Director: Can His Hands be Tied in Advance*, 50 Col. L. Rev. 52; Nota, *The Legality of Stockholders' Unanimous Agreements for the Management of Corporate Property*, 43 Ill. L. Rev. 561; 61 Harv. L. Rev. 1251, comentando el caso de *Long Park* v. *Trenton-New Brunswick Theatres Co.*, 77 N.E.2d 633 (N.Y., 1948); *Tremsky* v. *Green*, 106 N.Y.S.2d 572, 574 a 575 (N.Y., 1951); *Hyer* v. *Richmond Traction Company*, supra, 481; 60 Harv. L. Rev. 651, comentando el caso de *Ringling* v. *Ringling Bros.-Barnum & Bailey Comb. Shows*, 49 A.2d 603 (Del., 1946). Véase *Saldaña* v. *Comas, Síndico*, 41 D.P.R. 339, 348.

La demandante tendrá que dejar al tribunal sentenciador satisfecho en cuanto a todas las anteriores cuestiones—y en cuanto a otras que se nos hayan podido escapar—antes de que tenga derecho al cumplimiento del contrato. Algunos de los serios y sustanciales problemas de este caso muy bien pueden persuadir al tribunal sentenciador a que deniegue el remedio de cumplimiento del contrato. Pero como hemos visto una moción para eliminar alegaciones de una demanda no procederá si existe alguna posibilidad de que tales alegaciones tengan algo que ver con el litigio. De los autos ante nos—una demanda y una moción eliminatoria—no podemos decir que no existe contingencia posible de la cual la demandante tendría derecho al cumplimiento del contrato. Por tanto el tribunal sentenciador no cometió error al declarar sin lugar la moción eliminatoria.[8]

*El auto de certiorari será anulado.*

El Juez Asociado Sr. Belaval disintió.

---

[8] El demandado expresa en su alegato su preocupación porque la demandante le ha embargado un crédito de $100,000 propiedad suya. La forma más rápida de determinar si este embargo debe ser disuelto es radicando el demandado la correspondiente moción o contestación bajo la cual todas o algunas de las numerosas cuestiones levantadas en este caso pueden ser resueltas.

Opinión disidente del Juez Asociado señor Belaval.
(EN RECONSIDERACIÓN)

9 de diciembre de 1955

Siempre he creído, que en este caso, no procede ninguna acción para el cumplimiento específico del contrato firmado por las partes. Siendo esto así, mi opinión es que el peticionario tiene derecho a que se elimine de la súplica de la contestación todo lo relacionado con el cumplimiento específico de la obligación. El hecho que la descripción de la causa de pedir conste más claramente de la súplica que de la parte expositiva de la demanda, no debe alterar este resultado, ya que se trata simplemente de una cuestión de estilo.

La función de la moción eliminatoria es disponer previamente de cuanto resulte superfluo, innecesario o inútil a la cuestión litigiosa. La eliminación de tales materias simplifica la cuestión litigiosa y evita la presentación de prueba sobre aspectos de la cuestión litigiosa que, como cuestión de derecho, no significan nada para la resolución del problema jurídico.

Por esta razón, lamento tener que disentir otra vez, al solicitarse la reconsideración de nuestra sentencia del 11 de octubre de 1955, con la cual y por esta misma razón no estuve conforme.