AUTORIDAD DE LOS PUERTOS DE PUERTO RICO, peticionaria, *v.* TRIBUNAL SUPERIOR, SALA DE SAN JUAN, HON. SALVADOR ACEVEDO COLÓN, JUEZ, demandado; COOPERATIVA DE SERVICIOS DE EQUIPAJE DEL AEROPUERTO INTERNACIONAL, interventora.

*Número:* O-75-125    *Resuelto:* 29 de mayo de 1975

*América Lameiro de Irizarry, Marina Soto de Carrión, Jaime A. Betancourt Lebrón, José M. Pizarro Zayas, Carmen J. Febres Claudio, Fidel A. Sevillano Del Río* y *Angel G. González Robledo,* abogados de la peticionaria; *Alfredo Nazario* y *Vicente Ortiz Colón,* abogados de la Cooperativa de Servicios de Equipaje del Aeropuerto Internacional; *Cancio, Cuevas & Mayo,* abogados de la Interstate Air Service Corporation.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

Al terminar por resolución pactada el contrato entre la recurrente Autoridad de los Puertos de Puerto Rico e Interstate Air Service Corporation, que disfrutaba la concesión para servicios de acarreo, almacenaje y guarda de equipajes en el Aeropuerto Internacional, dicha corporación inquirió sobre fecha y condiciones de subasta para el nuevo contrato, por entender que la concesión sólo puede otorgarse previa celebración de subasta.[1] La Autoridad de los Puertos rechazó

---

[1] El Art. 11 de la Ley de la Autoridad de los Puertos de Puerto Rico (23 L.P.R.A. sec. 341) dispone:

"Todas las compras y contratos de suministros o servicios, excepto servicios personales, que se hagan por la Autoridad, incluyendo contratos para la construcción de obras de la misma, deberán hacerse mediante anuncio de subasta hecho con la suficiente antelación a la fecha de apertura de pliegos de proposiciones para que la Autoridad asegure el adecuado conocimiento y oportunidad de concurrencia; Disponiéndose, que cuando la suma estimada para la adquisición u obra no exceda de cinco mil (5,000) dólares, podrá efectuarse la misma sin anuncio de subasta. Para compras

la exigencia de Interstate y otorgó el nuevo contrato a una cooperativa organizada por los propios maleteros y demás trabajadores que antes estaban empleados por Interstate.

Interstate presentó demanda interesando remedios múltiples, exigiendo entre otros que se mantenga en vigor el contrato de concesión de servicios a su favor hasta tanto se celebre subasta, que se afirme esa disposición mediante *injunction* y que se condene a la Autoridad al pago de daños por $360,000. El tribunal de instancia accedió a la solicitud y expidió una orden de entredicho provisional, sin vista, prohibiendo a la Autoridad cancelar o modificar su contrato con Interstate, requiriéndola a mantener el mismo en vigor, y prohibiendo una nueva adjudicación sin subasta pública. Recurrió la Autoridad de los Puertos, suspendimos los procedimientos en el Tribunal Superior y aceptamos el caso para revisar mediante *certiorari*.

---

cuyo valor fluctúe entre mil (1,000) y cinco mil (5,000) dólares la Autoridad deberá solicitar cotizaciones de por lo menos tres fuentes de suministros. No serán necesarios anuncios de subasta o el requerimiento de cotizaciones para compras cuyo valor fluctúe entre mil (1,000) y cinco mil (5,000) dólares, cuando (1) debido a una emergencia se requiera la inmediata entrega de materiales, efectos y equipo, o ejecución de servicios; (2) cuando se necesiten piezas de repuesto, accesorios, equipo o servicios suplementarios para efectos o servicios previamente suministrados o contratados; (3) cuando se requieren servicios o trabajos de profesionales o de expertos y la Autoridad estime que en interés de una buena administración, tales servicios o trabajos deban contratarse sin mediar tales anuncios; ó (4) cuando los precios no están sujetos a competencia porque no haya más que una sola fuente de suministro o porque estén regulados por la ley; en tales casos, la compra de materiales, efectos o equipo, o la obtención de tales servicios podrán hacerse en mercado abierto en la forma corriente en las prácticas comerciales. Al comparar proposiciones y hacer adjudicaciones, se dará debida consideración a aquellos factores, (además de si el postor ha cumplido con las especificaciones) tales como el precio más bajo; la habilidad del postor para realizar trabajos de construcción de la naturaleza envuelta en el contrato bajo consideración; la calidad y adaptabilidad relativas de los materiales, efectos, equipo o servicios; la responsabilidad económica del licitador, y su pericia, experiencia, reputación de integridad comercial, y habilidad para prestar servicios de reparación y conservación; y el tiempo de entrega o de ejecución que se ofrezca. La Autoridad podrá decretar reglamentos para la presentación de licitaciones."

■ El *injunction* que desde su temprana etapa de entredicho está concediendo un remedio que en el procedimiento usual ordinario no se alcanza hasta vencer en juicio, debe expedirse con sobriedad y sólo ante una demostración de clara e intensa violación de un derecho. La orden de entredicho, como todo remedio provisional dirigido a asegurar la efectividad de sentencia, ha de pasar por el exigente tamiz de discreción judicial que ha de ejercitarse en cuidadosa ponderación del interés de todas las partes, y con mayor rigor cuando una de éstas no ha sido oída antes de librar la orden. Esta norma de moderación en el uso del *injunction* tiene su máxima aplicación cuando su efecto restrictivo ha de operar sobre una agencia u organismo de servicio público con grave impacto y erosión del derecho de las numerosas personas, del pueblo en general, a quien sirve la corporación pública. Aun cuando no existiera la prohibición específica de restricción por *injunction* en la Ley de la Autoridad de los Puertos de Puerto Rico[2] (Núm. 125, aprobada en 7 de mayo de 1942—23 L.P.R.A. sec. 331 y ss.) el tribunal de instancia no podía relegar a segundo plano el primordial interés público, superior al interés de las partes.[3] Al fijar el alcance de la orden de entredicho declara la Regla 57.4 de Procedimiento Civil que será obligatoria solamente para las partes en la acción, sus oficiales, agentes, sirvientes, empleados y abogados y para aquellas personas que actúen de acuerdo o participen activamente con

---

[2] El Art. 21 de la Ley (23 L.P.R.A. sec. 351) dispone que no se expedirá ningún *injunction* para impedir la aplicación de las secs. 331 a 352 de este título o cualquier parte de las mismas.

[3] Wright & Miller incluye el *interés público* entre los cuatro factores de importancia mayor a considerarse por el juez ante una solicitud de *injunction* preliminar. Los otros tres son el grado de amenaza de daño irreparable al promovente de no concederse el *injunction*; el balance comparativo entre dicho daño y el que se causará al demandado de expedirse el auto; y la probabilidad de que el actor prevalezca en los méritos. *Federal Practice & Procedure*, To. 11, págs. 430–431. *P.R. Telephone Co.* v. *Tribunal Superior*, 103 D.P.R. 200 (1975).

ellas y que reciban aviso de la orden mediante notificación personal o en cualquier otra forma. Excede y rebasa el ámbito de autoridad la orden de entredicho librada en este caso que a todas luces surtirá un ulterior efecto dañoso en perjuicio de miles de personas que en todas las horas de todos los días utilizan las facilidades de nuestro Aeropuerto Internacional. Estos usuarios ni son parte ni podrán ser notificados de la orden restrictiva. ¿Por qué han de sufrir las consecuencias de la pugna entre Interstate y la Cooperativa de sus exempleados disputándose el contrato de servicios en el Aeropuerto Internacional? La Ley no crea el interés social, lo reconoce y delimita. La sociedad civilizada impone ciertos compromisos entre la libertad individual y el interés social. En primer plano está el interés social en la seguridad general; el reclamo, el deseo o la exigencia de sentirse libre de aquellos actos y conducta que amenazan la existencia misma de la sociedad. Cuando la sociedad desarrolla su economía nace el interés individual en asegurar lo adquirido y en la certeza de las transacciones, moderado por el interés general en el progreso, en la continuada mejoría y avance de la ingeniería social que es tutela del Estado. Pound, *Jurisprudence*, Tomo III, pág. 235 y ss. Nadie tiene derecho, en una sociedad democrática, a promover sus particulares intereses a costa de un mayor sector del pueblo, imponiendo a éste un tributo de sufrimiento, privación, y desvalimiento, no importa la justicia real o nominal de la reclamación. Ya antes dijimos que "al considerar la expedición del auto el tribunal debe ponderar la naturaleza de los derechos individuales afectados frente al valor y utilidad social de la obra pública en cuestión." *Ortega Cabrera* v. *Tribunal Superior*, 101 D.P.R. 612, 618 (1973). La misma razón de política pública satura la prohibición general de *injunction* y orden de entredicho declarada en el inciso 3 del Art. 678 del Código de Enjuiciamiento Civil [32

L.P.R.A. sec. 3524 (3) ], según enmendado por Ley Núm. 12 aprobada el 8 de agosto de 1974. (⁴)

■ Hay razones adicionales que proscriben la orden de entredicho en el presente caso. El *injunction* es un recurso extraordinario que nació de la necesidad de suplir la falta de remedio adecuado en las cortes de derecho común. Todavía sigue atado a su abolengo de equidad. Cuando existe el remedio de resarcimiento de daños, y los hechos alegados en la demanda de Interstate no excluyen de un todo la adecuacidad de ese recurso de vía ordinaria, no debe acudirse al entredicho provisional. Wright & Miller, *Federal Practice & Procedure*, To. 11, sec. 2944, págs. 396–401, ed. 1973.

---

(⁴) Art. 678.—No podrá otorgarse un *injunction* ni una orden de entredicho:

"
.    .    .    .    .    .    .

"3. Para impedir la aplicación u observancia de cualquier ley de la Asamblea Legislativa de Puerto Rico, o el cumplimiento de cualquier actuación autorizada por ley de la Asamblea Legislativa de Puerto Rico, de un funcionario público, de una corporación pública, o de una agencia pública, o de cualquier empleado o funcionario de dicha corporación o agencia, a menos que se hubiera determinado por sentencia final, firme, inapelable o irrevisable, que dicha ley o actuación autorizada por ley es inconstitucional o inválida.

"
.    .    .    .    .    .    .

"Disponiéndose sin embargo que; el tribunal podrá dictar dicha orden de entredicho provisional, injunction preliminar o permanente sujeto a los términos de la Regla 57 de Procedimiento Civil:

"1) En aquellos casos en que ello sea indispensable para hacer efectiva su jurisdicción y previa una determinación de que la orden es indispensable para evitar un daño irreparable a la parte peticionaria;

"2) Cuando en la petición se alegue que alguna persona, bajo la autoridad de alguna ley, ordenanza, o reglamento del Estado Libre Asociado de Puerto Rico, esté privando o sea el causante de que alguien esté privando al peticionario de algún derecho, privilegio o inmunidad protegido por la Constitución o las leyes del Estado Libre Asociado de Puerto Rico o por la Constitución o Leyes de los Estados Unidos de América que sean aplicables a las personas bajo la jurisdicción del Estado Libre Asociado de Puerto Rico.

"Disponiéndose además; que al dictar dicha orden el Tribunal debe considerar el interés público envuelto y concluir que la parte peticionaria tiene una posibilidad real de prevalecer en los méritos de su petición. Dicha orden sólo tendrá vigor en el caso específico ante el tribunal y entre las partes."

■ La interventora Interstate hace énfasis en que la orden de entredicho que ahora se discute es sólo un mecanismo para hacer valer un anterior *injunction* que en 27 de marzo de 1973 obtuvo contra la Autoridad de Puertos y que este Tribunal rehusó revisar por resolución de 16 de mayo de 1974. Sin que sea necesario cuestionar la procedencia de aquel primer *injunction,* expedido a manera de una ingeniosa excepción a la prohibición de la Ley Núm. 125 de la Autoridad de Puertos antes citada, notamos que el mismo se dio para preservar un *status quo* contractual que hoy no existe pues desapareció con el aviso de terminación del contrato entre la Autoridad e Interstate. Un *injunction* no puede sobrevivir la extinción del estado de derecho y circunstancias factuales que dieron lugar a su expedición. El remedio no se perpetúa más allá de su razón genésica. Los tribunales nunca deben ignorar cambios de relieve en la ley o en las circunstancias que sostienen el *injunction* a riesgo de que éste se convierta en "instrumento de injusticia." *United States* v. *Swift & Co.,* 286 U.S. 105, 115 (Cardozo, J.).

■ Un fundamento adicional sobre el cual la interventora Interstate obtuvo la orden de entredicho provisional descansa en su contención de que la Autoridad recurrente otorgó la concesión de servicios de acarreo, almacenaje y guarda de equipajes a la Cooperativa de Servicios de Equipaje sin celebración de subasta, en contravención del Art. 11 de la Ley de la Autoridad de Puertos (23 L.P.R.A. sec. 341) negando a Interstate el derecho a licitar en gestión del contrato. Por las razones aquí expuestas tampoco ha de considerarse posibilidad de *injunction* hasta no recaer sentencia final y firme adjudicando la ilegalidad de actuación y ello tomando en conjunto todos los factores de perjuicio y conveniencia que esta opinión refiere.

*Se anulará la orden de entredicho y el expediente será*

*devuelto al tribunal de instancia para continuación de proce-dimientos consistentes con lo aquí resuelto.*

El Juez Presidente Señor Trías Monge se inhibió.