ÁNGEL LUIS GARCÍA, CARMEN GARCÍA y OTROS, demandantes y recurridos, *v.* WORLD WIDE ENTERTAINMENT CO., DARRIN MCGILLIS y OTROS, demandados y peticionarios.

*Número:* CE-92-126        *Resuelto:* 24 de diciembre de 1992

*José A. Cuevas Segarra*, de *Bufete José A. Cuevas Segarra*, abogado de los peticionarios; *Benjamín Angueira Aguirre*, abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR FUSTER BERLINGERI emitió la opinión del Tribunal.

Tenemos ante nos un asunto que no hemos decidido antes, aunque fue planteado ya una vez en *Prod. T. Muñiz, Inc. v. Fernández*, 98 D.P.R. 52 (1969), donde quedó sin resolver. La cuestión es si un promotor, que es el representante exclusivo de un artista, puede obtener un *injuction* para hacer valer su contrato de exclusividad, prohibiéndole al artista trabajar para terceras personas.

## I

El 19 de septiembre de 1990 los demandantes, los padres de Ángel Luis García, Jr. (Angelo), ex integrante del grupo musical Menudo, presentaron una demanda en representación del menor para solicitar que se decretara la nulidad de los contratos que ellos habían suscrito el 5 de febrero de ese mismo año con World Wide Entertainment Company (World Wide), titulados *Exclusive Recording Artist Agreement* y *Management Agreement*, mediante los cuales se acordó que esta compañía dirigiría con carácter exclusivo la carrera artística de Angelo como cantante solista.

En la demanda se alegó que ambos contratos eran nulos por ser contrarios a la ley, a la moral y al orden público. Como segunda causa de acción, los demandantes adujeron que la parte demandada había agredido físicamente y ha-

bía hostigado sexualmente al menor, por lo cual reclamaron daños y perjuicios. La demandada World Wide, por su parte, negó las alegaciones fundamentales y presentó una reconvención por incumplimiento de contrato, reclamando daños y perjuicios. Solicitó, además, del tribunal de instancia que dictara una orden que dispusiera el cumplimiento específico de los contratos y prohibiera a los demandantes violar las disposiciones contractuales concernidas durante el término de los contratos aludidos. En su réplica a la reconvención, los demandantes aceptaron que el Departamento del Trabajo y Recursos Humanos de Puerto Rico había expedido el permiso correspondiente para emplear al menor Angelo y que recibieron $37,500 al momento de la firma de los contratos.

El 10 de mayo de 1991, luego de la vista correpondiente, el tribunal resolvió en corte abierta, como cuestión de derecho, que los contratos concernidos eran válidos y que no eran contrarios a la ley, a la moral ni al orden público. No hizo pronunciamiento alguno en ese momento en torno a las demás alegaciones, dándoles a las partes un término para que trataran de transigir todo el resto del pleito extrajudicialmente.

Así las cosas, la parte demandada se enteró de que mientras los demandantes realizaban gestiones transaccionales y proponían planes de pago al tribunal, el joven Angelo había hecho declaraciones públicas sobre sus planes de grabar discos y hacer presentaciones personales en violación del contrato de exclusividad que tenía con World Wide. Los peticionarios procedieron entonces, el 7 de noviembre de 1991, a presentar la moción que nos ocupa, solicitando un remedio provisional para que el tribunal obligara al demandante: (1) al cumplimiento específico del contrato, y (2) a que cesara de hacer cualquier actividad artística con terceros en violación del contrato.

Los demandantes no formularon oposición alguna, pero el tribunal sentenciador denegó ambas modalidades del re-

medio solicitado, así como la reconsideración, a pesar de que tampoco se formuló objeción a ésta. Expresó el foro de instancia que el remedio solicitado no era el vehículo apropiado ni estaba disponible para obligar a un demandado a cumplir específicamente con una obligación de prestar servicios o de realizar trabajos para otro, por motivo de la prohibición constitucional contra la servidumbre involuntaria. Añadió que tampoco procedía para impedir que los demandantes realizaran trabajos para terceros porque, de prevalecer los demandados en los méritos, tendrían a su alcance el remedio de daños por incumplimiento de contrato.

Inconforme con esta resolución, la parte demandada recurrió ante nos haciendo, en lo pertinente, los señalamientos de error siguientes:

1. "Erró el Honorable Tribunal Superior, Sala de San Juan, al negarse a conceder una orden provisional de carácter interdictal pactada que proh[í]be a los demandantes hacer negocios con terceros en la industria del espectáculo por el período a que se obligaron bajo los contratos otorgados."
2. "Erró el Honorable Tribunal Superior, Sala de San Juan, al negarse a aplicar la doctrina de este Honorable Tribunal en *Nuñez Co. Soto Nussa, Juez de Distrito*, 14 DPR 199 (1908), a los efectos de que en casos de estipulación negativa para no prestar servicios a otro durante el período de empleo, procede el interdicto para el cumplimiento específico del contrato de arrendamiento de servicios."
3. "Erró el Honorable Tribunal Superior, Sala de San Juan[, ] al negarse a poner en vigor unos contratos entre las partes, los cuales ya había resuelto que era[n] válidos por no ser contrarios a la ley, a la moral, o al orden público." Petición de *certiorari*, págs. 4–5.

En 3 de abril de 1992 concedimos un término a la parte demandante para mostrar causa, si alguna tuviera, por la cual no debían ser modificadas las resoluciones recurridas del tribunal de instancia, a los *únicos efectos de prohibirle a los demandantes contratar con terceras personas* conforme con las disposiciones contractuales mientras se re-

suelve finalmente este pleito. Los demandantes recurridos han comparecido y, estando en posición de resolver, procedemos a hacerlo.

## II

En síntesis, alegan los peticionarios que el interdicto provisional solicitado fue expresamente pactado por las partes precisamente para evitar daños irreparables en caso de incumplimiento contractual. Su posición es que, habiendo las partes acordado la procedencia del remedio interdictal en caso de incumplimiento y estando expuestos a sufrir daños irreparables, debe concederse el remedio provisional solicitado.

No cabe duda de que las partes, en efecto, estipularon la procedencia del remedio interdictal en caso de incumplimiento. A tales efectos se acordó:

### EXCLUSIVE RECORDING ARTIST AGREEMENT

. . . . . . . .

#### 14. LEGAL AND EQUITABLE RELIEF

... You expressly agree that Company shall be entitled to the remedies of injuction and other equitable relief to prevent or remedy a breach of this Agreement, which relief shall be in addition to any other rights or remedies, for damages or otherwise, which Company may have. Apéndice, págs. 42–56.

También en el contrato denominado *Management Agreement* las partes dispusieron:

... Artists agrees that, in addition to all other forms of relief and all other remedies which may be available to Manager in the event of any such breach or threatened breach by Artist, *Manager shall be entitled to injunctive relief to prevent Artist from performing in violation of this agreement,* and Artist

agrees that in seeking such injunctive relief, Manager shall not be obligated to secure any bond or other security in connection with Manager's application for such relief. (Énfasis suplido.) Apéndice, pág. 38.

■■■ Como se sabe, los pactos entre contratantes tienen fuerza de ley y deben cumplirse al tenor de los mismos. Art. 1044 del Código Civil, 31 L.P.R.A. sec. 2994. Los contratantes pueden establecer los pactos, las cláusulas y las condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral y al orden público. Art. 1207 del Código Civil, 31 L.P.R.A. sec. 3372. Los tribunales de justicia no pueden relevar a una parte de cumplir con lo que se obligó a hacer mediante contrato cuando dicho contrato es legal y válido, y no contiene vicio alguno. *Constructora Bauzá, Inc. v. García López*, 129 D.P.R. 579 (1991); *Hidalgo v. Depto. Servicios Sociales*, 129 D.P.R. 605 (1991); *Cervecería Corona v. Commonwealth Ins. Co.*, 115 D.P.R. 345, 351 (1984); *Olazábal v. U.S. Fidelity, Etc.*, 103 D.P.R. 448, 462 (1975); *Matricardi v. Peñagarícano, Admor.*, 94 D.P.R. 1, 4 (1967).

A la luz de lo anterior, debemos indagar si existe algún fundamento legal que, no empece el acuerdo entre las partes, impida el remedio interdictal solicitado. ¿Prohíbe el ordenamiento jurídico nuestro el uso del *injuction* provisional para evitar que unas partes contraten con terceras personas cuando esas partes voluntariamente y mediante compensación se han obligado a un acuerdo de exclusividad con el peticionario? *Nótese que no estamos discutiendo la procedencia del remedio interdictal para obligar a una parte al cumplimiento específico de una obligación de prestar servicios o realizar trabajos para otro.* Lo único que tenemos ante nos es el segundo uso solicitado de ese remedio: para impedir que se realicen acuerdos presuntamente ilegales con terceros.

III

■ En *Vázquez v. Tribl. Superior*, 78 D.P.R. 744, 748–749 (1955), reiteramos la norma general vigente en nuestra jurisdicción de que "el hecho de que un demandante que alegue incumplimiento de contrato tenga un remedio adecuado por vía de daños y perjuicios no le impide tratar de obtener el cumplimiento del contrato". Señalamos allí que de ordinario tal demandante puede escoger entre exigir el cumplimiento del contrato o la resolución de la obligación con el resarcimiento de daños, a menos que exista alguna circunstancia o disposición especial que impida que pueda ordenarse el cumplimiento del contrato.

■ Una de las circunstancias especiales en las cuales nuestros tribunales están impedidos de ordenar el cumplimiento específico de un contrato es cuando se exige la prestación de servicios personales. *Núñez v. Soto Nussa, Juez de Distrito*, 14 D.P.R. 199 (1908); *Vázquez v. Tribl. Superior*, supra. En tales casos, la posición de nuestro ordenamiento jurídico es igual a la que prevalece, en general, tanto en el derecho civil como en el derecho norteamericano de que, por tratarse de una actividad personalísima vinculada a la libertad del deudor, no cabe decretarse el cumplimiento forzoso en forma específica, por lo que la ejecución de la obligación tiene que resolverse en daños y perjuicios. J. Puig Brutau, *Fundamentos del Derecho Civil*, Barcelona, Ed. Bosch, 1959, T. I, Vol. II, pág. 234; J. Castán Tobeñas, *Derecho Civil español común y foral*, Madrid, Ed. Reus, 1967, T. III, pág. 186; D. Rivé Rivera, *Recursos Extraordinarios*, Programa de Educación Legal Continuada, Facultad de Derecho Universidad Interamericana, 1989, págs. 43–48.

■ La limitación antes discutida al principio general de que puede exigirse el cumplimiento específico de un con-

trato no se extiende, sin embargo, a la obligación contractual que impone al deudor el deber de no realizar algo que, a no ser por el contrato, podría libremente hacer. En estos casos de las llamadas obligaciones negativas, u obligaciones de no hacer, el Código Civil nuestro así como el español intiman la procedencia del cumplimiento forzoso al ordenar que cuando el deudor ejecute lo que le estaba prohibido, podrá decretarse que se deshaga lo hecho indebidamente. Art. 1052 del Código Civil, 31 L.P.R.A. sec. 3016. Los comentaristas del derecho civil admiten aquí la substitución del decreto aludido antes por la indemnización de daños y perjuicios únicamente cuando es imposible deshacer lo hecho indebidamente como, por ejemplo, cuando se divulga un secreto comercial ilícitamente. Puig Brutau, *op. cit.*, pág. 235; Castán Tobeñas, *op. cit.*, pág. 187. Igual sucede en el derecho norteamericano. Como señala Rivé Rivera, *op. cit.*, pág. 58, si bien desde sus inicios "la jurisprudencia de equidad ha reconocido como una de sus limitaciones la prohibición que le impide expedir Injuctions para obligar a un demandado ... a cumplir con su obligación de trabajar para otro", también es cierto que "[l]os tribunales, ante este tipo de contrato de trabajo, *han optado por emitir, en lugar de órdenes de Injuction mandatorio, otras mediante las que se le proh[í]be al demandado trabajar en violación del contrato.* De esa manera ... *se le garantiza al demandante que el obligado por el contrato no le prestará servicios a un competidor".* (Énfasis suplido.) Rivé Rivera, *op. cit.* En efecto, en la jurisprudencia norteamericana se ha reconocido que aunque de ordinario los tribunales no pueden ordenar el cumplimiento específico de una promesa afirmativa, sí pueden hacer cumplir la promesa negativa inferida dentro de la anterior. Así, mientras no es posible compeler a una persona a realizar labores bajo un contrato de servicios personales, es posible impedir que dicha persona preste sus servicios en cualquier otro sitio durante la vigencia del contrato. Véanse: *Beverly*

*Glen Music v. Warner Communications*, 224 Cal. Reptr. 260, 261 (1986); *Madison Square Garden Boxing, Inc. v. Shavers*, 434 F. Supp. 449 (1977); *Clooney v. WCPO TV. Div. of Scripps-Howard B. C.*, 300 N.E.2d 256 (1973); *Houston Oilers, Inc. v. Neely*, 361 F.2d 36 (10mo Cir.), *cert.* denegado, 385 U.S. 840 (1966); *Skyland Broadcasting Corporation v. Hamby*, 141 N.E.2d 783 (1957); *Harry Rogers Theatrical Enterprises v. Comstock*, 232 N.Y.S. 1 (1er Dept. 1928); *Winter Garden v. Smith*, 282 Fed. Ed. 166 (2do Cir. 1922); *Shubert Theatrical Co. v. Rath*, 271 Fed. Ed. 827 (2do Cir. 1921); *Shubert v. Angeles*, 80 N.Y.S. 146 (1er Dept. 1903).

Recientemente, en *Zink Communications v. Elliott*, 1990 U.S. Dist. Lexis 14784 (S.D. N.Y. 1990), se hizo un extenso resumen analítico de la jurisprudencia estatal y federal, donde se emitió un interdicto en una situación como la que nos concierne. Al respecto, citando los criterios elaborados por la Corte de Apelaciones de Nueva York en *AM. Broadcasting Companies v. Wolf*, 438 N.Y.S.2d 482, 487, 420 N.E.2d 363, 368 (1981), en *Zink Communications v. Elliott*, supra, pág. 45, se expresó:

"If the employee (a) refuses to perform during the period of employment (b) was furnishing unique services (c) has expressly or by clear implication agreed not to compete for the duration of the contract and (d) the employer is exposed to irreparable injury, it may be appropiate to restraint the employee from competing until the agreement expires".

En nuestro ordenamiento jurídico el procedimiento de *injuction* se rige principalmente por la Regla 57 de Procedimiento Civil, 32 L.P.R.A. Ap. III. *Corujo Collazo v. Viera Martínez*, 111 D.P.R. 552 (1981). Ni esta regla ni la Regla 56 —del mismo cuerpo— sobre remedios provisionales, que incluye las órdenes para desistir de hacer, contienen prohibición alguna que impida el uso del *injuction* en situaciones como las que nos concierne. La única referencia

relativa a este asunto se encuentra en la llamada Ley de *Injunction*, 32 L.P.R.A. sec. 3524(4), que prohíbe que se emita este recurso "[p]ara impedir el quebrantamiento de un contrato cuyo cumplimiento no habría de exigirse específicamente". Dicha disposición, que fue tomada directamente del Código de Enjuiciamiento Civil de California, tiene una historia y un alcance claramente conocidos. Rivé Rivera, *op. cit.*, págs. 43–48. La misma descarta el uso del *injunction* para impedir el incumplimiento de un contrato si la prestación que se interesa bajo dicho contrato es de las que, según el derecho de equidad norteamericano, no puede exigirse de manera específica. Si lo que se interesa es exigible específicamente según el derecho de equidad, entonces puede usarse el *injunction*. En otras palabras, la disposición aludida sólo persigue que para el cumplimiento forzoso de las obligaciones se sigan las pautas trazadas por la equidad norteamericana en cuanto al remedio de *injunction* se refiere. Rivé Rivera, *op. cit.*, pág. 47. Sobre este particular es menester recordar que el *injunction* se introdujo en nuestro ordenamiento jurídico, tomado de la jurisdicción en equidad de Estados Unidos, para permitir que alguna parte que estuviese sufriendo una injusticia pudiese compeler el cumplimiento estricto de su derecho y así conjurar dicha injusticia, incluyendo la ejecución específica de determinadas obligaciones contractuales.(¹) Así surgió en nuestro derecho la posibilidad de exigir el cumplimiento forzoso de ciertos contratos, pero siempre sujeto a las normas de la equidad norteamericana, de donde tomamos el recurso de *injunction*. Rivé Rivera, *op. cit.*, pág. 48.

▬▬ Como ya hemos señalado, en la jurisdicción de equidad norteamericana se permite el *injunction* para impedir que una parte pueda pactar o hacer negocios con terceros si esa parte se ha obligado contractualmente a no

---

(¹) *Informe de la Comisión para revisar y compilar las leyes de Puerto Rico*, Washington, Government Printing Office, 1901, T. I, pág. 285.

realizar tales pactos o negocios. Por lo tanto, en Puerto Rico el recurso extraordinario de *injunction* también puede usarse para esos fines.

Lo que ahora resolvemos normativamente fue anticipado por este Tribunal en uno de los pronunciamientos expresados en *Núñez v. Soto Nussa, Juez de Distrito*, supra. En ese caso lo que estaba estrictamente ante el Tribunal Supremo era un *injunction* para obligar a una artista profesional a cantar en una zarzuela, conforme al contrato que había suscrito a esos fines. No obstante, el Tribunal, luego de citar el inciso de la Ley de *Injunction* que ya hemos discutido, señaló lo siguiente:

> Es una regla general que puede deducirse de las resoluciones de los varios tribunales de última instancia en los diferentes estados de la Unión Americana, que un contrato por servicios profesionales no puede ser específicamente exigido directamente por la orden de una corte, *ni tampoco puede exigirse indirectamente por un injunction impidiendo que el empleado salga del servicio de su principal, á menos que haya una estipulación negativa para que no preste sus servicios á otros durante el período de empleo.* (Énfasis suplido.) *Núñez v. Soto Nussa, Juez de Distrito*, supra, pág. 202.

Evidentemente, como en el caso ahora ante nos, si existe un convenio de no prestar servicios a otros, según lo previsto en *Núñez v. Soto Nussa, Juez de Distrito*, supra, pág. 202, procede el *injunction* para hacer valer esa parte del convenio. De otro modo, los llamados contratos de exclusividad perderían gran parte de su efectividad.

Nada de lo anterior altera los señalamientos previos de este Tribunal en cuanto a que el *injunction* "debe expedirse con sobriedad y sólo ante una demostración de clara e intensa violación de un derecho". *A.P.P.R. v. Tribunal Superior*, 103 D.P.R. 903, 906 (1975). Lo que hoy resolvemos sólo autoriza que *pueda* considerarse el uso del recurso interdictal en situaciones como las de marras. No releva la discreción judicial de ejercitar una rigurosa y cui-

dadosa ponderación de los intereses de todas las partes antes de conceder el remedio, ni obliga al foro sentenciador a emitir el *injunction* si a juicio de éste el balance de todos esos intereses es contrario a conceder el recurso.

## IV

En el caso ante nos, el tribunal de instancia, amparándose en *P.R. Telephone Co. v. Tribunal Superior*, 103 D.P.R. 200 (1975), resolvió que no se le podía prohibir a los demandantes realizar trabajos para terceros, aunque se violasen las disposiciones de los contratos objeto de este pleito, porque los demandados tenían a su alcance otro remedio adecuado "como sería la debida indemnización por los daños resultantes de cualquier incumplimiento contractual", añadiendo que si se concedía el remedio solicitado, "el demandante reconvenido se vería impedido de explotar su talento durante un período crítico de su vida profesional ...". Apéndice, pág. 91. Evidentemente, el Tribunal a quo entendió que si existía otro remedio adecuado disponible, no debía concederse un *injunction* preliminar que podía ocasionar serios daños a la parte demandada. ¿Fue correcta esta determinación?

En *P.R. Telephone Co. v. Tribunal Superior*, supra, reiteramos los factores que deben considerarse a fin de determinar si procede un *injunction* preliminar o *pendente lite*. Ciertamente indicamos que debía considerarse si existe o no un remedio adecuado en ley, al igual que la naturaleza de los daños que puedan ocasionársele a la parte contra la cual se solicita el recurso. *Pero estos no son los únicos criterios que el tribunal de instancia debe ponderar.* En esa misma opinión también indicamos otros factores que deben considerarse ya que han sido siempre parte de la doctrina tradicional relativa al recurso de *injunction*. Así, pues, el tribunal también debe considerar

la naturaleza del daño que pueda sufrir el peticionario de denegarse el recurso, si tales daños son o no irreparables y si existe la probabilidad de que la causa se torne académica de no concederse el *injunction*. Estos y otros criterios también deben sopesarse antes de resolver si se emite el remedio provisional solicitado.

En el caso ante nos, los peticionarios han hecho alegaciones que, de ser ciertas, podrían ameritar que se emita el remedio interdictal solicitado. Señalan éstos que invirtieron grandes sumas de dinero en el entrenamiento y en la promoción del joven cantante considerando precisamente que, como tal, él es un ídolo entre los adolescentes, por lo que su productividad artística en años futuros, cuando ya no sea un menor, puede disiparse. Han alegado expresamente los comparecientes que por ello —por la naturaleza única y temporal de los servicios contratados— existe el peligro de que se torne académica la causa que reclaman si hay que esperar mucho tiempo para dilucidarla. Han alegado, además, que existe el riesgo de que los recurridos en su día no puedan pagar la sentencia que se les imponga por incumplimiento de contrato. Más aún, han señalado los peticionarios que si Angelo puede hacer negocios libremente con otros empresarios a pesar del contrato de exclusividad con ellos, su credibilidad y reputación comercial (*good will*) se verá afectada en la industria del espectáculo, perjudicando no sólo las actividades suyas relativas a este artista sino también otras oportunidades de negocios lucrativos con otros artistas.

Finalmente, los peticionarios alegan que la denegación del remedio solicitado tendrá un impacto adverso sobre el interés público. Empresarios locales y extranjeros no querrán aventurarse a contratar exclusivamente con otros menores talentosos ante la incertidumbre de si tales contratos exclusivos son vinculantes. Ello, alegadamente, obstaculizará el posible desarrollo de otros jóvenes puertorriqueños dentro del mundo del espectáculo y perjudicará a la indus-

tria artística del país en general. Esta alegación, de ser cierta, es importante porque en *P.R. Telephone Co. v. Tribunal Superior*, supra, también identificamos el impacto sobre el interés público de conceder o denegar el recurso como otro de los factores que debían considerarse al determinar la procedencia del *injunction* provisional.

Ninguna de las consideraciones anteriores parecen haber sido sopesadas por el tribunal de instancia en este caso. Ciertamente ese foro no hizo expresión, mención o alusión alguna de ellas en la resolución recurrida, en la cual denegó el remedio solicitado. Si no fueron evaluadas, como aparentemente no lo fueron, no cumplió el foro de instancia a cabalidad con la norma de *P.R. Telephone Co. v. Tribunal Superior*, supra, y de la doctrina clásica sobre *injunction*. La decisión de conceder o denegar el recurso interlocutorio debe descansar en un ponderado análisis de *todos* los factores en juego y no sólo de algunos de ellos. Es menester poner en la balanza todos los intereses pertinentes.

A la luz de los señalamientos anteriores, *se modifican las resoluciones recurridas del tribunal de instancia para dejar sin efecto la determinación de que no procede el remedio provisional solicitado para prohibir a los demandantes realizar trabajos con terceros que violen las disposiciones contractuales aplicables. El foro a quo deberá reevaluar dicha determinación en conformidad con lo que hemos expresado en esta opinión.*

El Juez Asociado Señor Hernández Denton disintió mediante una opinión escrita, a la cual se unió el Juez Asociado Señor Rebollo López.

— O —

Opinión disidente emitida por el Juez Asociado Señor Hernández Denton, a la cual se une el Juez Asociado Señor Rebollo López.

La controversia planteada requiere que, partiendo de la premisa de que el contrato de servicios exclusivos en cuestión es válido, determinemos si puede un tribunal emitir un *injunction* para evitar que se contrate con terceros en violación a la cláusula de exclusividad. Por entender que hay disponible un remedio monetario, y en vista de la protección constitucional contra la servidumbre involuntaria y la libertad del trabajador a escoger su ocupación y a renunciar a ella (Art. II, Secs. 12 y 16, Const. E.L.A., L.P.R.A., Tomo 1), disentimos.

El Art. 678(4) del Código de Enjuiciamiento Civil prohíbe que se utilice el recurso de *injunction* para impedir el quebrantamiento de un contrato cuyo cumplimiento no habría de exigirse específicamente. 32 L.P.R.A. sec. 3524(4). Tal es el caso del contrato de servicios personales. En *Núñez v. Soto Nussa, Juez de Distrito*, 14 D.P.R. 199, 201–203 (1908), dijimos que, como regla general, un tribunal no puede directa ni indirectamente ordenar el cumplimiento específico de un contrato de servicios profesionales personales.[1] Véase, además, *Vázquez v. Tribl. Superior*, 78 D.P.R. 744, 749 (1955). Esta norma no sólo tiene fundamentos en los principios de equidad, sino en la protección constitucional contra la servidumbre involuntaria y la libertad para escoger un empleo. Const. E.L.A., *supra*; D.

---

[1] Este Tribunal ya dejó atrás la distinción artificiosa entre el *injunction* mandatorio y el prohibitorio, ya que todo *injunction* prohibitorio puede ser redactado de modo que se convierta en mandatorio. *Central Altagracia v. Otero Et. Al.*, 13 D.P.R. 111, 118 (1907). A manera de ejemplo, un *injunction* mandatorio que ordene a una persona que rinda sus servicios puede ser redactado de manera prohibitoria, *e.g.*, prohibiéndole que deje de incumplir su contrato de servicio. Esto último es lo que pretende la recurrente.

Rivé Rivera, *Recursos Extraordinarios*, Programa de Educación Legal Continuada, Facultad de Derecho de la Universidad Interamericana, 1989, pág. 20.

En *Núñez v. Soto Nussa, Juez de Distrito*, a manera de *dictum*, expresamos que una excepción a esta norma lo sería un caso en que hubiera una estipulación de no prestar servicios a un tercero durante el periodo de empleo. *Núñez v. Soto Nussa, Juez de Distrito*, supra, pág. 202. Sin embargo, ya vigente nuestra Constitución, este Tribunal intimó un cambio en su posición. En *Prod. T. Muñiz, Inc. v. Fernández*, 98 D.P.R. 52 (1969), se nos presentó una controversia similar a la de autos. No nos pronunciamos en los méritos sobre este asunto, pues el caso era académico. No obstante, en el esc. 1 sugerimos que si es posible reparar el daño con una compensación monetaria, el *injunction* sería la última opción.

Sostenemos que la posición intimada en *Prod. T. Muñiz, Inc. v. Fernández*, supra, es la correcta. La misma es compatible con la norma sentada en *A.P.P.R. v. Tribunal Superior*, 103 D.P.R. 903, 908 (1975), a los efectos de que, cuando existe el remedio en daños, no debe acudirse al entredicho provisional. También está en armonía con el Art. 678 del Código de Enjuiciamiento Civil, *supra*, que prohíbe que se emitan *injunctions* para impedir el quebrantamiento de contratos cuyo cumplimiento específico no podría exigirse mediante ese remedio. Por último, esta norma se impone a la luz de las Secs. 12 y 16 del Art. II de nuestra Constitución antes citados. Éstas prohíben la servidumbre involuntaria y reconocen el derecho de todo trabajador a escoger libremente su ocupación y a renunciar a ella.

Eliminar el *injunction* como alternativa para evitar el incumplimiento de los contratos de servicios personales no significa que vayan a quedar desprotegidos los contratos de exclusividad en esos casos. Siempre puede y debe recurrirse a la acción en daños.

Por las razones que anteceden, disentimos.