SENTENCIA
El 8 de diciembre de 1993, la Srta. Nayri Collazo Vázquez otorgó un contrato verbal de opción de compra con el Ledo. José Antonio Casillas Fernández. Mediante dicho contrato, el licenciado Casillas Fernández acordó venderle a la señorita Collazo el bien inmueble siguiente:
URBANA: Solar marcado con la letra K-dos (K-2) de la Urbanización San Benito, radicada en los Barrios Mabú y Collores del término municipal de Humacao, Puerto Rico, con un área superficial de ochocientos cinco punto cuatro mil doscien *85 tos metros cuadrados (805.4200 m/c). En lindes por el NORTE, con Julio Delgado; por el SUR, con solar K-tres (K-3); por el ESTE, con la calle de la urbanización y por el OESTE, con el Desarrollo El Pedregal.
Las partes contratantes acordaron que el precio de compraventa sería de $171,000. La señorita Collazo entregó $30,000 al licenciado Casillas para abonarlos al precio de compraventa. Así las cosas, el licenciado Casillas entregó la posesión del bien a la señorita Collazo para que le efectuara las mejoras que estimara necesarias. Eventualmente, con el consentimiento de la señorita Collazo, el licenciado Casillas vendió el inmueble a los recurridos por $177,000.
La señorita Collazo instó una demanda en Cobro de Dinero y Enriquecimiento Injusto contra los recurridos ante el Tribunal de Primera Instancia. En su demanda alegó que mediante un contrato verbal, los recurridos se obligaron a restituirle los $30,000 que ella entregó al licenciado Casillas como el dinero invertido en las mejoras.
Los recurridos alegaron que nunca tuvo lugar dicho convenio verbal. Argüyeron que al pagar $177,000 por el inmueble no se subrogaron en el lugar de la señorita Collazo. La escritura de compraventa número 39 de 14 de junio de 1995, otorgada ante el notario Juan Carlos Miranda Rodríguez, se presentó como evidencia de la transacción.
Desafortunadamente, la señorita Collazo falleció poco después de instar su acción ante el Tribunal de Primera Instancia. Sus padres, los peticionarios, presentaron la correspondiente solicitud de sustitución el 16 de agosto de 2002, y a pesar de la oposición de los recurridos, el tribunal acogió su solicitud favorablemente.
Mediante un Requerimiento de Admisiones, los peticionarios solicitaron a los recurridos que admitieran su compromiso de pagar por las mejoras realizadas en la propiedad. Además, se les requirió que admitieran que en la suma que ellos le pagaron al licenciado Casillas estaban incluidos los $30,000 del adelanto que pagó la señorita. *86 Collazo. El requerimiento fue notificado a los recurridos el 15 de marzo de 1999, pero éstos alegaron haberlo recibido el 18 de marzo de 1999, por lo cual lo contestaron el 7 de abril de 1999, tres días después de vencido el término de rigor. En su contestación los recurridos negaron la mayor parte de las alegaciones.
Los peticionarios solicitaron que se diese por admitido todo el contenido del Requerimiento de Admisiones, según el mandato de la Regla 33 de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, y que se dictara sentencia sumaria a su favor a base de los requerimientos admitidos. El tribunal dictó una Resolución y/o Sentencia Sumaria Parcial, en la que ordenó a los recurridos rembolsar a los peticionarios $30,000 que la señorita Collazo dio al licenciado Casillas Fernández como adelanto del precio de compraventa. En cuanto al dinero invertido por la señorita Collazo en remodelar la propiedad, el tribunal ordenó la celebración de una vista en su fondo, de manera que las partes pudieran presentar la evidencia necesaria para determinar la cuantía.
Luego de acudir en reconsideración de esta determinación del Tribunal de Primera Instancia, los recurridos presentaron un recurso de Certiorari ante el Tribunal de Apelaciones. Ese foro desestimó el recurso por haberse presentado tardíamente, pero reconoció que la Resolución y/o Sentencia Parcial recurrida carecía de finalidad porque no contenía la certificación requerida por la Regla 43.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III.(1) Devuelto el caso al Tribunal de Primera Instancia, éste reiteró el carácter final y firme de su Resolución y/o Sentencia Parcial.
Celebrada la vista en su fondo, el Tribunal de Primera Instancia le confirió entera credibilidad a la prueba de los *87 peticionarios, por lo que concedió las partidas reclamadas por dicha parte. La decisión del foro de primera instancia se basó en el Requerimiento de Admisiones que se dio por admitido en el acuerdo verbal entre la señorita Collazo y los recurridos, y en los principios generales del enriquecimiento injusto.
Apelada la decisión, el Tribunal de Apelaciones desestimó la demanda. Dicho foro señaló como dato importante que los recurridos habían pagado una cantidad mayor al precio sujeto a opción por la peticionaria como precio de compraventa. Concluyó el tribunal apelativo que el licenciado Casillas retuvo para sí los $30,000 del adelanto, pues los recurridos ni se subrogaron en el lugar de la peticionaria ni se beneficiaron de dicha cantidad en la compraventa. Además, el tribunal determinó que el Tribunal de Primera Instancia erró al resolver dicha controversia utilizando el mecanismo de la Regla 33 de Procedimiento Civil, supra, en contravención a lo resuelto por este Tribunal en Audiovisual Lang. v. Sist. Est. Natal Hnos., 144 D.P.R. 563 (1997).
En cuanto a la partida concerniente a las mejoras, decretó el Tribunal de Apelaciones que de acuerdo con el Artículo 287 del Código Civil, 31 L.P.R.A. see. 1131, y por el derecho de accesión allí conferido, no procedía dicho pago. El foro apelativo determinó que el licenciado Casillas, como titular de la propiedad al momento en que se hicieron las mejoras, tenía derecho a hacerlas suyas. Por eso los recurridos tampoco estaban obligados a pagarle a los peticionarios por las mejoras que hizo la señorita Collazo.
Los herederos de la Srta. Nayri Collazo Vázquez nos solicitan que revoquemos la sentencia del Tribunal de Apelaciones. Los peticionarios nos piden que de acuerdo con las determinaciones del Tribunal de Primera Instancia, reconozcamos la existencia de un contrato verbal entre la fenecida y los recurridos, y ordenemos a éstos últimos que cumplan con lo convenido en dicho contrato.
*88 Examinada la solicitud de certiorari, concedemos un término a los recurridos para que muestren causa por la cual no debemos expedir el auto solicitado y revocar en parte la sentencia del Tribunal de Apelaciones, específicamente en cuanto a su decisión de no conceder el pago de $29,472 por los gastos en los que incurrió para mejorar el inmueble adquirido por los recurridos. Con el beneficio de las comparecencias de ambas partes, este Tribunal expide el auto y la mayoría de sus componentes acuerdan revocar en parte la decisión del Tribunal de Apelaciones. Por esto se ordena que los recurridos paguen $29,472 a los peticionarios por los gastos en que han incurrido en las mejoras al inmueble de su propiedad.
Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal. El Juez Asociado Señor Fuster Berlingeri y la Juez Asociada Señora Rodríguez Rodríguez concurrieron con el resultado sin opinión escrita. El Juez Asociado Señor Rivera Pérez emitió una opinión de conformidad. La Jueza Asociada Señora Fiol Matta concurrió con el resultado con una opinión escrita. El Juez Asociado Señor Rebollo López disintió por entender que un adquirente de una propiedad que no tuvo nada que ver con un negocio anterior de opción de compra, otorgado por el dueño de dicha propiedad y, por ende, nada que ver con la construcción de mejoras en dicha propiedad por parte del optante, quien construyó las mejoras con la aquiescencia del dueño de la propiedad, no tiene ni debe tener obligación jurídica alguna de pagarle al optante por dichas mejoras. Entiende, además, el Juez Asociado Señor Rebollo López que la norma mayoritaria establecida —la cual es por tiempo indefinido— no sólo es errónea, sino que causará un serio disloque en el tráfico jurídico de inmuebles en nuestra jurisdicción; ello en vista de que, al amparo de dicha norma, el adquirente de una propiedad puede estar obligado a pagar por una serie de mejoras realizadas con anterioridad a la fecha de la compra de la propiedad, lo cual tendrá la consecuencia nociva *89 de hacer aún más difícil la decisión de comprar una propiedad en Puerto Rico. El Juez Presidente Señor Hernández Denton se une a las expresiones del Juez Asociado Señor Rebollo López.
(.Fdo.) Aida Ileana Oquendo Graulau

Secretaria del Tribunal Supremo

Opinión de conformidad emitida por el
Juez Asociado Señor Rivera Pérez.
El caso de autos presenta una sencilla controversia: resolver si merecía deferencia judicial la determinación de hecho del Tribunal de Primera Instancia de que los demandados se obligaron a reembolsar a la demandante determinados gastos útiles y en concepto de mejoras —en los que ella incurrió— en un bien inmueble adquirido por los primeros vía compraventa y sobre el cual, previamente, la última ostentó su posesión y una frustrada opción de compra.
I
En julio de 1996 la Sra. Nayri Collazo Vázquez (señora Collazo Vázquez) instó en el Tribunal de Primera Instancia una acción civil y personal de “cobro de dinero” y “enriquecimiento injusto” contra el Ledo. Roberto Huertas Infante (licenciado Huertas Infante), su esposa, la señora Milka Mojica del Toro, y la Sociedad Legal de Gananciales compuesta por ambos (esposos Huertas-Mojica).(1) Como cuestión de hecho, el tribunal denominó la acción presen *90 tada como “Civil Núm. HCD 1996-0052, Sobre: Cobro de Dinero”.(2)
En su demanda, la señora Collazo Vázquez alegó que el 8 de diciembre de 1993 otorgó un contrato de opción de compra con el Ledo. José Antonio Casillas Fernández (licenciado Casillas). Adujo que mediante el referido contrato obtuvo la opción de comprarle un bien inmueble, consistente en un solar y una edificación residencial enclavada en él, sito en la Urbanización San Benito del municipio de Humacao, bajo el convenido precio de $171,000.(3)
La señora Collazo Vázquez sostuvo, además, que con el otorgamiento del contrato de opción entregó $30,000 al licenciado Casillas, constitutivos de un adelanto del precio de compraventa. Argüyó que, a su vez, y en consideración a dicho adelanto, el licenciado Casillas le entregó la posesión del inmueble y la autorizó a practicarle mejoras a la edificación.(4) Alegó que, en efecto, introdujo mejoras al inmueble.
Por otro lado, señaló que, posteriormente, por haber gastado en mejoras el dinero con que habría de comprar el inmueble en cuestión, y ante la imposibilidad de adquirirlo, llegó a un acuerdo con el codemandado licenciado Huertas Infante. Según alegó, ella y el licenciado Huertas Infante tenían entonces una relación de amistad, cimentada en el hecho de que ella y la hermana de éste, de nombre Gladys Huertas Infante, sostenían una relación consensual.(5)
Argüyó que, en esencia, el acuerdo fue el siguiente: en ánimo de no perder los $30,000 que adelantó al licenciado *91 Casillas al otorgar el contrato de opción de compraventa ni perder el dinero invertido en mejorar la residencia, ella renunciaba a su opción para que el licenciado Huertas Infante pudiera comprar la propiedad, a cambio de lo cual le reembolsaría ambas partidas. Específicamente, sostuvo que, en consideración a la relación que tenían, el licenciado Huertas Infante le indicó que adquiriría el bien inmueble y lo refinanciaría “para pagarle su inversión”.(6)
Así, la señora Collazo Vázquez alegó que el 14 de junio de 1995 los esposos Huertas-Mojica le compraron al licenciado Casillas el inmueble en controversia por $177,000, esto es, $6,000 adicionales al precio de compraventa que originalmente ella había convenido con éste. Añadió que, posteriormente, procedió a reclamarle a los esposos Huertas-Mojica el pago de los aludidos $30,000 y el reembolso de los gastos en mejoras en los que incurrió en la propiedad enajenada. Sostuvo que sus gestiones en tal sentido resultaron infructuosas.(7)
Añadió que el licenciado Huertas Infante no sólo incumplió su compromiso, sino que, a pesar de reconocer la existencia de la deuda, se negó a evidenciarla y a garantizarla por escrito, aduciendo que, siendo una obligación sin plazo, él no se lo iba a fijar. En ese sentido, alegó que los esposos Huertas-Mojica disfrutaban y se beneficiaban injustamente de las mejoras que ella introdujo a la propiedad.(8) Finalmente, suplicó al Tribunal de Primera Instancia que ordenase a los esposos Huertas-Mojica cumplir con la obligación personal contraída.(9)
Por su parte, en su contestación a la demanda, los esposos Huertas-Mojica negaron la existencia de la alegada obligación personal y levantaron las defensas afirmativas *92 de ausencia de hechos que justifiquen la concesión de un remedio, prescripción, impedimento e incuria.(10)
Luego de múltiples incidentes procesales, que incluyeron que la sucesión de la señora Collazo Vázquez la sustituyera en el pleito —a causa de su fallecimiento— y efectuado el juicio en su fondo, el Tribunal de Primera Instancia dictó una sentencia en la que declaró “ha lugar” la demanda en cobro de dinero y enriquecimiento injusto. Apoyó su dictamen, principalmente, en la credibilidad que le mereció la prueba testifical desfilada en el juicio,(11)
En síntesis, el Tribunal de Primera Instancia determinó, como hecho probado, que la señora Collazo Vázquez otorgó con el licenciado Casillas un contrato de opción de compraventa sobre la propiedad inmueble antes descrita. Que en el acto de su otorgamiento entregó al promitente de la opción, licenciado Casillas, $30,000 como adelanto del precio de compraventa. Asimismo, determinó que, con la aquiescencia del licenciado Casillas, la señora Collazo Vázquez entró en posesión de la propiedad con una autorización para hacerle mejoras. Además, determinó que, en efecto, ésta realizó mejoras a la estructura residencial enclavada en el solar ascendentes a $29,472.10.
Por otro lado, el Tribunal de Primera Instancia determinó, como hecho probado, que al gastar el dinero que tenía disponible para adquirir la propiedad, y al no poder ejercer su derecho de opción, la señora Collazo Vázquez acordó verbalmente con los esposos Huertas-Mojica renunciar a tal derecho para que éstos pudieran comprar la propiedad a cambio de que le reembolsaran los $30,000 que adelantó al licenciado Casillas y lo invertido en mejoras a la edificación residencial. Asimismo, determinó que el 14 de junio de 1995, mediante un otorgamiento de escritura pública, y por la suma de $177,000, los esposos Huertas- *93 Mojica, en efecto, le compraron al licenciado Casillas la propiedad en cuestión.
Finalmente, el Tribunal de Primera Instancia determinó que, en vida, la señora Collazo Vázquez le requirió sin éxito a los esposos Huertas-Mojica que honraran su compromiso de reembolsarle las mencionadas partidas.
Así las cosas, el Tribunal de Primera Instancia condenó a los esposos Huertas-Mojica a reembolsarle a la señora Collazo Vázquez los $30,000 que adelantó al licenciado Casillas del precio de compraventa y los $29,472.10 que ésta gastó en mejoras al inmueble.(12) En relación con estas últimas, determinó que consistieron en cambios en los pisos y en la cocina, “incluyendo gabinetes nuevos; puertas y sus marcos; cerraduras de puertas; baños; trabajos de ebanistería”.(13)
Inconformes, los esposos Huertas-Mojica apelaron el dictamen ante el Tribunal de Apelaciones. Éste revocó la sentencia apelada y, en su lugar, ordenó la desestimación de la demanda.(14) El foro intermedio apelativo fundamentó su sentencia revocatoria en dos apuntalamientos principales.
En primer lugar, el Tribunal de Apelaciones expresó que el foro primario erró manifiestamente al concluir que los esposos Huertas-Mojica se obligaron a devolverle a la señora Collazo Vázquez los mencionados $30,000, ya que la prueba desfilada en el juicio estableció que, a fin de cuentas, los primeros pagaron al licenciado Casillas la totalidad del precio acordado para la adquisición del inmueble ($177,000), de manera que este último retuvo para sí el depósito de $30,000.(15) En ese sentido, expresó que era un hecho incontrovertido que el licenciado Casillas no devolvió a la señora Collazo Vázquez los referidos $30,000 ni los *94 acreditó al precio de compraventa que convino con los esposos Huertas-Mojica.(16) Siendo ello así, concluyó que a éstos no les correspondía reembolsar a la señora Collazo Vázquez los $30,000.
En segundo lugar, el foro intermedio apelativo señaló que, a base del precio de $177,000 pagado por los esposos Huertas-Mojica para adquirir el inmueble.(17) no le parecía razonable que éstos se hubiesen obligado a reembolsar a la señora Collazo Vázquez los $29,472.10 gastados en mejoras a la edificación residencial.(18)
Insatisfechos con la determinación del Tribunal de Apelaciones, la sucesión de la señora Collazo Vázquez, compuesta por su padre y madre, Sr. Inocencio Collazo López y Sra. Ana R. Vázquez Cruz (los peticionarios), acudieron oportunamente ante nos mediante un recurso de certiorari. Señalaron que el foro intermedio apelativo incurrió en el error siguiente:
ERRO EL HONORABLE TRIBUNAL DE APELACIONES AL REVOCAR AL TRIBUNAL DE INSTANCIA, SUSTITU-YENDO SU CRITERIO EN CUESTIONES DE HECHO SIN TENER RAZÓN VÁLIDA EN DERECHO PARA ELLO.
Evaluado el recurso, emitimos una Resolución para concederle a los esposos Huertas-Mojica un término de treinta días para mostrar causa por la cual no debíamos expedir el auto solicitado y revocar la sentencia del Tribunal de Apelaciones, tan sólo en aquella parte que revoca la determinación del foro primario que les ordena pagar a los peticionarios $29,472.10 por concepto de mejoras realizadas a la propiedad. Asimismo, le concedimos igual y simultáneo *95 término a los peticionarios para que se expresaran sobre lo anterior, si así lo creían pertinente.
Las partes han comparecido, por lo que estamos en posición de resolver.
II
Surge claramente del cuadro fáctico del caso de autos que ni la demandante original ni sus sucesores en el litigio, instaron causa de acción alguna de naturaleza real contra los esposos Huertas-Mojica. No invocaron tener derecho alguno de naturaleza real frente a éstos.
Por otro lado, ni la parte demandante ni la parte demandada hicieron planteamiento alguno en esa dirección ante el Tribunal de Apelaciones. Tampoco ante nosotros. Ni el Tribunal de Primera Instancia ni el de Apelaciones atendieron la controversia de marras como una en la que incidieran derechos de naturaleza real. Ambos foros resolvieron la controversia sin hacer pronunciamiento alguno en tal sentido.
El Art. 294 del Código Civil establece que lo edificado, plantado o sembrado en terreno ajeno y las mejoras o reparaciones hechas en él, pertenecen a su dueño, con sujeción a lo dispuesto en los artículos que le suceden en dicho cuerpo legal.(19) Así, el Art. 297 del Código Civil indica que el dueño del terreno en que se edifique de buena fe, tendrá derecho a hacer suya la obra, previo el pago al edificante del costo de los materiales y la mano de obra, o el costo de reproducción de la misma al momento en que el dueño del terreno ejercite su derecho, deduciendo la depreciación, lo que sea mayor, o a obligar al que fabricó a pagar el precio del terreno.(20) Ello sobre la base de que lo accesorio *96 sigue a lo principal, siendo la superficie terrenal lo principal y la construcción lo accesorio.(21)
Por su parte, el Art. 382 del Código Civil dispone que los gastos útiles se abonan al poseedor de buena fe, ostentando el derecho de retención sobre la cosa poseída hasta que le sean satisfechos, pudiendo optar el que le hubiese vencido en la posesión, por satisfacerle el importe de los gastos o por abonarle el aumento de valor que por ellos haya adquirido la cosa.(22)
En E.L.A. v. Tribunal Superior, 94 D.P.R. 157, 162 (1967), extendimos expresamente el derecho de retención que consagra el Art. 382 del Código Civil, supra, al edificante de buena fe que describe el Art. 297 del Código Civil, supra.
El análisis de los artículos en cuestión y de la norma jurisprudencial adoptada en el caso citado demuestra que el ordenamiento jurídico supervaloró el derecho propietario del dueño del terreno(23) y el derecho propietario del reinvindicante judicial de la cosa, frente a los derechos conferidos, respectivamente, al edificante de buena fe en terreno ajeno y al poseedor de buena fe que incurre en gastos útiles en la cosa ajena. Es evidente que tanto el dueño del terreno como el reivindicante judicial de la cosa han sido colocados por el ordenamiento jurídico en una posición favorecida en relación con el edificante de buena fe y en relación con el poseedor de buena fe, respectivamente.
No es una casualidad que el Art. 297 del Código Civil, supra, conceda exclusivamente al dueño del terreno el derecho a optar entre indemnizar al edificante de buena fe el *97 costo de los materiales y la mano de obra, o el costo de reproducción de ésta al momento en que éste ejercitase su derecho a hacerla suya, deduciendo la depreciación, lo que sea mayor, u obligarlo a pagar el precio del terreno. Tampoco es que el Art. 382 del Código Civil, supra, otorgue exclusivamente al reivindicante judicial de la cosa poseída de buena fe el derecho a optar entre satisfacer al poseedor vencido en juicio el importe de los gastos útiles incurridos en ella, o abonarle el aumento de valor que por ellos haya adquirido.
Como señaláramos anteriormente, en el presente caso el foro primario determinó, como hecho probado, que durante su tiempo posesorio la señora Collazo Vázquez le introdujo “mejoras” a la estructura residencial enclavada en el solar, a saber: modificaciones en los pisos y en la cocina, gabinetes nuevos, le puso puertas, marcos y cerraduras de puertas, realizó cambios a los baños y efectuó trabajos de ebanistería. Además, sabemos que dicho foro determinó que los gastos en las referidas “mejoras” ascendieron a la suma de $29,472.10.
Si presumimos la corrección de dichas determinaciones de hecho, la señora Collazo Vázquez tenía, en relación con los referidos gastos, ciertos derechos. Veamos.
De considerar a la señora Collazo Vázquez como edificante de buena fe, según el Art. 297 del Código Civil, supra, y a su vez concebir como mejoras los cambios hechos a la estructura residencial, ésta tenía derecho a que el licenciado Casillas, antes de vender la propiedad a los terceros, esposos Huertas-Mojica, le reembolsara los gastos en materiales y mano de obra, o le indemnizara con su costo de reproducción al momento en que éste ejercitó su derecho a hacerlas suyas, deduciendo la depreciación, lo que sea mayor. Por otro lado, si concibiéramos a la señora Collazo Vázquez como poseedora de buena fe según el Art. 382 del Código Civil, supra, y como gastos útiles los cambios intro *98 ducidos a la estructura residencial, tenía derecho a que el licenciado Casillas se los abonara, o le abonara el aumento de valor que en función de ellos adquirió el bien inmueble.
De otra parte, según E.L.A. v. Tribunal Superior, supra, independientemente de si concebimos a la señora Collazo Vázquez como una edificante de buena fe, como una poseedora de buena fe o como ambas cosas, tenía un derecho de garantía muy particular para proteger su acreencia: el derecho a retener la cosa hasta tanto el licenciado Casillas le reembolsara, indemnizara o abonara el dinero que le incumbía, según se explicó.
Sin embargo, la señora Collazo Vázquez no le compró la propiedad al licenciado Casillas y procedió a entregarle su posesión, sin oponerle el citado derecho de garantía y sin exigirle el reembolso, indemnización o abono de los gastos útiles y en concepto de las mejoras en controversia. Lejos de ello, el Tribunal de Primera Instancia determinó que la señora Collazo Vázquez prefirió tratar de conseguir el reembolso del dinero en cuestión por medio de los esposos Huertas-Mojica, quienes, según también determinara, compraron finalmente la propiedad.
Entonces, nos preguntamos, ¿tenía la señora Collazo Vázquez algún derecho estatutario frente a los compradores del bien inmueble? o, lo que es igual, ¿tenían los compradores alguna obligación legal ante la señora Collazo Vázquez? En definitiva, ¿tiene un poseedor de buena fe o edificante de buena fe, que incurre en gastos útiles o en concepto de mejoras en una estructura residencial ajena, y que entrega su posesión a su dueño sin oponerle el derecho de retención que le confiere el ordenamiento jurídico, algún derecho de origen estatutario frente a un tercero que, finalmente, compra el inmueble? Desde la perspectiva jurídicoestatutaria la respuesta es: NINGUNO. Veamos.
Un simple y sereno análisis de los discutidos Arts. 297 y 382 del Código Civil, supra, demuestra que las únicas relaciones que están sometidas a reglamentación legislativa *99 son, respectivamente, la habida entre el dueño del terreno y el edificante de buena fe, y la habida entre el reivindicante de la cosa y su poseedor de buena fe vencido en juicio. Como indicáramos antes, el ordenamiento jurídico favoreció al dueño del terreno y al reivindicante judicial de la cosa frente al edificante de buena fe y frente al poseedor de buena fe, respectivamente. Le concedió opciones alternativas a los primeros, justificadas en la máxima de que, como norma general, lo accesorio sigue a lo principal. En nuestra opinión, los Arts. 297 y 382 del Código Civil, supra, reconocen al edificante de buena fe y al poseedor de buena fe, respectivamente, derechos personales de crédito, no de naturaleza real. Al no tener tal alcance, no pueden invocarse ante terceros.
La única garantía sobre la cosa, es decir, sobre la edificación construida o sobre la cosa objeto de gastos útiles que el ordenamiento jurídico otorgó al edificante de buena fe y al poseedor de buena fe, respectivamente, fue el derecho de retención sobre una u otra. Este derecho de garantía, por su naturaleza, es oponible al dueño original del solar ajeno en el que se edificó de buena fe, en el momento en que dicho dueño original reclama al edificante tener derecho propietario, por accesión, sobre la edificación construida. Asimismo, es oponible al reivindicante judicial de la cosa que fue objeto de gastos útiles, en el momento en que dicho reivindicante reclama a su antiguo poseedor de buena fe la entrega de su posesión, en obediencia al mandato judicial que ordena la reivindicación.
Obviamente, si el edificante de buena fe o el poseedor de buena fe acceden al reclamo del dueño del solar o reivindicante de la cosa, sin hacer uso del derecho de retención que les asiste, con ello están renunciando a la única garantía que sobre la cosa el ordenamiento jurídico les confirió. En tal eventualidad, no pierden sus respectivos derechos de crédito frente al dueño original del solar o reivindicante judicial de la cosa, sino meramente la garantía que de *100 acuerdo con el derecho de retención recaía sobre el solar o la cosa, según haya sido el caso.
Por lo tanto, en ese escenario, el edificante de buena fe o, en su caso, el poseedor de buena fe, todavía podría reclamar del dueño original del solar o del reivindicante judicial de la cosa, en una acción in personam, su respectivo derecho de indemnización o reembolso. Desde la perspectiva estatutaria, nada puede reclamar contra un tercero adquirente de la cosa, pues, como hemos visto, el ordenamiento jurídico no le confirió ningún derecho frente a ese tercero.
En Berrocal v. Tribunal de Distrito, 76 D.P.R. 38 (1954),(24) igual que en el presente caso, no había ante la consideración judicial una acción de naturaleza real. En aquél, los dueños de un solar lo cedieron en arrendamiento, con permiso para fabricar e introducirle mejoras, a un matrimonio cuyo régimen económico matrimonial era el de Sociedad Legal de Gananciales. Al percatarse de que el matrimonio había comenzado a construir un sólido edificio en el solar, los arrendadores solicitaron y obtuvieron del esposo arrendatario una modificación escrita al contrato, que configuró, en realidad, un nuevo contrato de arrendamiento. Por medio del segundo contrato, el matrimonio se obligaba a retirar lo construido a su vencimiento, sin derecho a compensación o indemnización de clase alguna. Dicho de otra forma, por virtud del nuevo contrato, el matrimonio renunciaba a la compensación que concede al edificante de buena fe el Art. 297 del Código Civil, supra. La controversia del caso giró, entonces, y específicamente, en torno a si el nuevo contrato fue eficaz en derecho o nulo, por falta del consentimiento escrito de la esposa arrendataria. La disputa era entre arrendadores y arrendatarios; no había terceros involucrados.
Además, Berrocal v. Tribunal de Distrito, supra, es, en sus hechos, enteramente distinguible del caso que ahora nos ocupa. Allí, por medio del primer contrato, los arrenda *101 dores cedieron a los arrendatarios el goce, uso y disfrute de un solar vacío, con autorización para edificar sobre él. En efecto, los arrendatarios construyeron un edificio sobre el solar.
Sin embargo, en el caso de autos, el licenciado Casillas entregó a la señora Collazo Vázquez la posesión de un bien inmueble, consistente en un solar y una residencia enclavada en él, sobre la cual le autorizó a introducirle mejoras. En efecto, en todo momento, la señora Collazo Vázquez y sus sucesores en el pleito han alegado que introdujeron mejoras a la estructura residencial enclavada en el solar, no que construyeran una residencia o edificio de nueva planta.
Reconocerle al poseedor de buena fe o edificante de buena fe un derecho de naturaleza real a obtener el reembolso, la indemnización o el abono de los gastos útiles o en concepto de las mejoras que hizo en una estructura residencial ajena, no sólo sería una actuación antijurídica, sino impráctica.
Anteriormente, indicamos que el Tribunal de Primera Instancia encontró probada la realización de ciertas mejoras a la estructura residencial en cuestión, a saber: modificaciones en los pisos y en la cocina, gabinetes nuevos, puertas, marcos y cerraduras de puertas nuevas, cambios a los baños, y trabajos de ebanistería. Preguntémonos, ¿cómo podemos cumplir con el principio de especialidad o especificación, que orienta y sirve de base al sistema inmobiliario registral, a la hora de inscribir el pretendido derecho real? ¿Cómo podemos describir o detallar en el Registro de la Propiedad las especificaciones que conduzcan a la individualización de tales mejoras? ¿Cómo describimos una remodelación de baño, o de cocina, o determinado trabajo de ebanistería? Y, ¿cómo se inscribe en el Registro de la Propiedad el derecho pretendido?
De otro lado, ¿le estaríamos exigiendo a los compradores de residencias en Puerto Rico que antes de comprar una *102 residencia hagan una investigación extraregistral que incluya auscultar si el baño, la cocina, determinada habitación, las puertas, marcos y cerraduras de puertas, fueron introducidas por el propio vendedor, o por un arrendatario anterior, o por un poseedor de buena fe, o por un optante anterior que interesaba comprar la residencia? Incluso, en caso de que el comprador advenga en conocimiento de este tipo de realidad extrarregistral, ¿le exigiríamos que le requiera evidencia al vendedor que demuestre que satisfizo al arrendatario, o al poseedor, o al optante, la compensación o los gastos útiles que instituyen los Arts. 297 y 382 del Código Civil, supra? No podemos imponer tal carga a la industria de bienes raíces, ni es conveniente hacerlo.
Concluimos que si alguien era estatutariamente responsable ante la señora Collazo Vázquez por su acreencia no eran los esposos Huertas-Mojica.
Ahora bien, aunque los esposos Huertas-Mojica no le respondían estatutariamente a la señora Collazo Vázquez por su acreencia, debemos examinar si le respondían de otra manera.
El Art. 1206 de nuestro Código Civil dispone lo siguiente:
El contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio.(25)
Mientras, el Art. 1207 de dicho cuerpo reglamentario consagra que
[líos contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público.(26)
Por su parte, el Art. 1210 del Código Civil establece lo siguiente:
*103 Los contratos se perfeccionan por el mero consentimiento, y desde entonces obligan, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley.(27)
El Art. 1044 de nuestro Código Civil postula que
[l]as obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mismos.(28)
Finalmente, el Art. 1208 del referido Código dispone que “[l]a validez y el cumplimiento de los contratos no pueden dejarse al arbitrio de uno de los contratantes”.(29)
Del articulado conjunto, especialmente de los últimos cuatro artículos citados, surgen los conocidos principios de la autonomía de la voluntad contractual y de la inalterabilidad del contenido del contrato o pacta sunt servanda.
Cabe destacar que el principio de la autonomía de la voluntad contractual es piedra angular de nuestro sistema económico. El principio nos dice que en materia de contratos rige la libertad de contratación entre las partes. Y es que nuestro ordenamiento jurídico ha brindado gran libertad de acción a los particulares que desean obligarse, reconociéndoles una autónoma voluntad para ello. Claro está, dicha autonomía no es ilimitada, pues es nulo un contrato que resulte contrario a las leyes, a la moral o al orden público.(30)
Ese principio no tendría la importancia que reviste en nuestro ordenamiento económico si no tuviese como contraparte el de la inalterabilidad del contenido del contrato (pacta sunt servanda). Este principio postula que los pactos entre contratantes tienen fuerza de ley y se deben cum-
*104 plir sin que su validez y cumplimiento quede al arbitrio de uno sólo de ellos.(31) Así nos hemos expresado acerca del referido principio:
Compromiso y rigor es el tenor de este principio. Las partes se obligan a todos los extremos de lo pactado que sean conformes a la ley, a la moral y al orden público. Por otro lado, la atadura o vínculo contractual tiene sus límites en la voluntad expresa de las partes y, claro está, en todo aquello que sea derivado de las expectativas razonables de lq que la buena fe dicta respecto a la relación contractual. (Enfasis suplido.)(32)
La prueba testifical que desfiló en la vista evidenciaría del presente caso reveló que la señora Collazo Vázquez acordó verbalmente con los esposos Huertas-Mojica renunciar a su derecho de opción de compraventa, para que éstos pudieran comprar la residencia en controversia, a cambio de que le reembolsaran los gastos en que se incurrió en mejorarla. En la vista se admitió prueba de que los esposos Huertas-Mojica, en efecto, compraron la propiedad. Incluso, desfiló prueba de que, estando aún viva, la señora Collazo Vázquez visitó a los esposos Huertas-Mojica —en la vivienda que los primeros tenían en las Parcelas Martorell de Yabucoa— para requerirles el reembolso de los gastos en los que incurrió en las mejoras. Según surge de la transcripción de la vista, el licenciado Huertas Infante contestó al requerimiento de pago: “tan pronto yo venda la casa te voy a pagar el dinero.”(33) Se refería a la casa en que vivía en las Parcelas Martorell.(34)

La prueba antes reseñada, que apuntó a la existencia del referido acuerdo verbal, fue aquilatada y creída por el Tribunal de Primera Instancia.

*105 El acuerdo que el Tribunal de Primera Instancia estimó probado beneficiaba tanto a la señora Collazo Vázquez como a los esposos Huertas-Mojica. La señora Collazo Vázquez adquirió la opción de comprar la propiedad en $171,000, allá para el 8 de diciembre de 1993 y, año y medio después, el 14 de junio de 1995, los esposos Huertas-Mojica la adquirieron por $177,000. En ese momento, la residencia había recibido una presunta inversión en mejoras de $29,472.10, de parte de la señora Collazo Vázquez. Por lo tanto, como consecuencia del acuerdo, la señora Collazo Vázquez obtuvo el beneficio de recuperar su inversión en mejoras, mientras que los esposos Huertas-Mojica ganaron acceso a la adquisición por compra de un bien inmueble sustancialmente mejorado.
En fin, el Tribunal de Primera Instancia determinó, a base de un ejercicio de credibilidad, que los esposos Huertas-Mojica se obligaron contractualmente a reembolsar a la señora Collazo Vázquez las mejoras en controversia y que incumplieron con dicha obligación. También determinó, según la prueba que ante sí desfiló, las mejoras realizadas, en qué consistieron y cuánto dinero se invirtió en su hacer, específicamente, $29,472.10. Según se deduce de la sentencia del foro primario, esta última determinación se hizo apoyada en cheques cancelados y facturas de compra de materiales admitidos en evidencia. Por consiguiente, el referido foro condenó a los esposos Huertas-Mojica al cumplimiento específico de la referida obligación contractual.
El Tribunal de Apelaciones revocó al tribunal sentenciador porque no le pareció razonable la versión de que éstos se hubiesen obligado a reembolsar a la señora Collazo Vázquez los referidos $29,472.10. Por su parte, en su comparecencia ante nos, los esposos Huertas-Mojica atacan la prueba sobre la existencia de la obligación contractual, aquella que se refiere a la realización de las mejoras e, incluso, a la prueba que condujo a la determinación de su *106 cuantía. No obstante, su comparecencia padece del mismo déficit que aquel extremo de la sentencia del foro intermedio apelativo que revocó al foro primario en cuanto a este asunto.
De ordinario, en ausencia de error manifiesto, pasión, prejuicio o parcialidad, a los tribunales apelativos les está vedado intervenir con las determinaciones de hecho, basadas en la credibilidad, que imparte el juzgador.(35) Es norma trillada que tales determinaciones merecen gran deferencia de parte de los tribunales apelativos. En obediencia a esta norma de derecho, no deben descartar arbitrariamente ni sustituir las determinaciones del foro primario por su propio criterio, formado a base de un expediente mudo y frío, a no ser que las mismas carezcan de fundamento suficiente en la prueba presentada.(36)
El Tribunal de Apelaciones sustituyó las determinaciones del Tribunal de Primera Instancia con relación a la existencia de la obligación contractual, la realización de las mejoras y su costo —por su propia concepción de las alegaciones— de la prueba y de lo que era justo y razonable, sin hacer señalamiento alguno demostrativo de que dicho foro incurriera en error manifiesto, pasión, prejuicio o parcialidad. Incidió al no concederle deferencia a las determinaciones de hecho del Tribunal de Primera Instancia.
Los esposos Huertas-Mojica no tienen una obligación nacida de la ley frente a los peticionarios por las mejoras que su causante, y demandante original en el pleito, señora Collazo Vázquez, introdujo a la residencia en cuestión. No obstante, contrajeron con la finada una obligación de naturaleza contractual que ahora no pueden eludir.(37) Esa obligación nació del ejercicio autónomo de su *107 voluntad. Ya que la referida obligación no resulta contraria a las leyes, a la moral ni al orden público, están compelidos a cumplirla.
En este caso, el contrato es la ley entre las partes. La obligación de reembolsar el dinero invertido en las mejoras en controversia tiene que ser ejecutada conforme se acordó, pues su validez y cumplimiento no está al sólo arbitrio de los recurridos como parte contratante. Militan en apoyo de esta conclusión los discutidos principios de la autonomía de la voluntad contractual y de la inalterabilidad del contenido del contrato.
III
Por todo lo anterior, estamos conformes con la sentencia que hoy emite el Tribunal. Concluimos que incidió el Tribunal de Apelaciones al revocar aquella parte de la sentencia del Tribunal de Primera Instancia que condena a los recurridos a reembolsar a los peticionarios $29,472.10, por concepto de mejoras efectuadas a la residencia adquirida por los primeros, mediante compra al Ledo. José Antonio Casillas Fernández, sita en la Urbanización San Benito del municipio de Humacao.

 Dicha regla prescribe que el tribunal puede dictar sentencia final en cuanto a una o más de las reclamaciones o partes de un pleito sin disponer de la totalidad de éste, siempre que concluya expresamente que no existe razón para posponer que se dicte sentencia sobre tales reclamaciones o partes hasta la resolución total del pleito. Sólo cuando se haga la referida conclusión y se ordene el registro, se entenderá final la sentencia parcial.

 Apéndice del recurso de Certiorari, págs. 18-21.

 íd., pág. 1.

 íd., pág. 18.

 íd., pág. 19.

 íd., pág. 19. Por otro lado, en su sentencia, el Tribunal de Primera Instancia expresó que la amistad se debía, además, a que, previamente, el Ledo. Roberto Huertas Infante la había representado con éxito en un caso de daños y perjuicios. íd., pág. 9.

 íd., págs. 19-20.

 íd.

 íd.

 íd., pág. 21.

 íd., pág. 22. No plantearon ninguna otra defensa ni esgrimieron planteamiento de hecho.

 íd., págs. 1-12 y, particularmente, las págs. 11-12.

 íd., págs. 11-12.

 íd., pág. 8.

 íd., págs. 770-778.

 íd., págs. 772-773 y, particularmente, la pág. 780.

 íd., pág. 781. De hecho, aunque el foro a quo no lo indica en su Sentencia, un examen de la demanda presentada por la señora Collazo Vázquez demuestra que ésta admitió en su aseveración Núm. 10 que la suma que recibió el licenciado Casillas de parte de los esposos Huertas-Mojica incluía los referidos $30,000. íd., pág. 19.

 Según indicamos antes, $6,000 adicionales al precio de compraventa originalmente convenido por la señora Collazo Vázquez con el licenciado Casillas.

 íd., págs. 10-11.

 31 L.P.R.A. sec. 1161.

 31 L.P.R.A. sec. 1164.

 E.L.A. v. Tribunal Superior, 94 D.P.R. 157, 160 (1967).

 31 L.P.R.A. see. 1468. Aclaramos que dicho artículo dispone que el poseedor de buena fe tiene iguales derechos de abono y retención cuando incurre en gastos necesarios. Ya que en el caso de marras no se ha planteado controversia alguna con relación a los gastos necesarios, omitiremos, en lo sucesivo, toda referencia o discusión en relación con éstos.

 E.L.A. v. Tribunal Superior, supra, pág. 160.

 Berrocal v. Tribunal de Distrito, 76 D.P.R. 38, 40-46 y 62-63 (1954).

 31 L.P.R.A. sec. 3371.

 31 L.P.R.A. sec. 3372.

 31 L.P.R.A. sec. 3375.

 31 L.P.R.A. sec. 2994.

 31 L.P.R.A. sec. 3373.

 De Jesús González v. A.C., 148 D.P.R. 255, 263-264 (1999).

 Mun. de Ponce v. A.C. et al., 153 D.P.R. 1, 35 (2000); Mun. de Ponce v. Gobernador, 136 D.P.R. 776, 787 (1994); García v. World Wide Entmt. Co., 132 D.P.R. 378 (1992).

 PaineWebber, Inc. v. Soc. de Gananciales, 151 D.P.R. 307, 311 (2000).

 Apéndice del recurso de certiorari, pág. 361.

 íd.

 Pueblo v. Narváez Narváez, 122 D.P.R. 80, 91 (1988); Pueblo v. Maisonave Rodríguez, 129 D.P.R. 49 (1991).

 Pueblo v. Maisonave Rodríguez, supra, pág. 62.

 “Las obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos o en que intervenga cualquier género de culpa o negligencia.” Art. 1042 del Código Civil, 31 L.P.R.A. sec. 2992.